RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

HOMERO QUINTANILLA NAVARRO,

*Defendant-Appellant*.

No. 20-5640

─────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:17-cr-00167-1—Aleta Arthur Trauger, District Judge.

Decided and Filed:  January 28, 2021

Before:  MOORE, ROGERS, and GRIFFIN, Circuit Judges.

─────────────

**COUNSEL**

**ON BRIEF:**  Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.  Amanda J. Klopf, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

GRIFFIN, J., delivered the opinion of the court in which ROGERS, J., joined.  MOORE, J. (pp. 8–12), delivered a separate dissenting opinion.

─────────────

**OPINION**

─────────────

GRIFFIN, Circuit Judge.

Homero Quintanilla Navarro appeals the district court's denial of his motion for compassionate release.  He argues that his poor health, coupled with the COVID-19 pandemic

and his status as a non-violent offender, tipped the balance of the factors under 18 U.S.C. § 3553(a) in his favor, so the district court abused its discretion by coming to the opposite conclusion. We disagree and affirm.

I.

In 2017, defendant pleaded guilty with the benefit of a plea agreement reached under Federal Rule of Criminal Procedure 11(c)(1)(C) to conspiring to distribute and possess with intent to distribute and possessing with intent to distribute five kilograms or more of cocaine, *see* 21 U.S.C. §§ 841(a)(1) and 846, and illegally reentering the United States after having been removed subsequent to a felony conviction, *see* 8 U.S.C. § 1326(a), (b)(1). The district court accepted the plea and sentenced him to 120 months of imprisonment, and he did not appeal.

In April 2020, Quintanilla filed a pro se motion referring to the COVID-19 pandemic, which the district court construed as a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The district court appointed counsel for Quintanilla, and counsel filed a supplemental motion on Quintanilla's behalf, asserting that he has underlying medical conditions that put him at high risk of severe illness from COVID-19, including diabetes, obesity, and hypertension; that his facility, FCI Oakdale, was among those hardest hit by the pandemic; and that the 18 U.S.C. § 3553(a) factors weighed in favor of release. The government responded in opposition, arguing that defendant had not demonstrated sufficiently extraordinary and compelling reasons and that, even if he had, his motion should be denied because he is a danger to the community and his release would be inconsistent with the § 3553(a) factors. The district court denied the motion in a form order, stating that it had considered the applicable § 3553(a) factors and policy statements and conducted a "complete review" of the merits. Quintanilla timely appealed from the district court's order.

II.

Since the district court's denial of Quintanilla's motion, we have in a trio of cases provided more guidance on how to evaluate compassionate release motions brought by prisoners. *See United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020); *United States v. Jones*, 980 F.3d 1098

(6th Cir. 2020); *United States v. Elias*, — F.3d —, 2021 WL 50169 (6th Cir. 2021). Each case warrants further discussion.

*Ruffin* set forth the three substantive requirements that must be met before a district court may grant compassionate release under 18 U.S.C. § 3582(c)(1)(A). 978 F.3d at 1004–05. First, "the court initially must 'find' that 'extraordinary and compelling reasons warrant such a reduction.'" *Id.* at 1004 (quoting § 3582(c)(1)(A)(i) (brackets omitted)). Second, "the court next must 'find' 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* at 1005 (quoting § 3582(c)(1)(A)(ii) (brackets omitted)). Third, "[e]ven if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with [the applicable policy statements], the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Id.* (quoting § 3582(c)(1)(A) (brackets omitted)).

Next, in *Jones*, we elaborated in detail on what is required to "strike the proper balance" between "accord[ing] due deference to district judges" while still "correct[ing] their factual and legal errors" in the context of a motion for compassionate release. 980 F.3d at 1112. In so doing, we acknowledged that district courts are not required to "pen a 'full opinion' in every sentencing or sentencing-modification decision." *Id.* (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018)). So, where "a matter is [ ] conceptually simple . . . and the record makes clear that the sentencing judge considered the evidence and arguments," a district court is not required to render an extensive decision. *Id.* (alteration in original) (quoting *Rita v. United States*, 551 U.S 338, 359 (2007)). But on the other hand, *Jones* also opined that "[i]n *most* circumstances, '[a] district court's use of a barebones form order . . . would be inadequate.'" *Jones*, 980 F.3d at 1114 (emphasis added and second alteration in original) (quoting *Chavez-Meza*, 138 S. Ct. at 1967). According to *Jones*, a district court's use of a form order is reserved only for cases involving "thorough record evidence of the judge's factual decisions." *Id.*

Finally and most recently, *Elias* clarified that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do

not need to address the others." 2021 WL 50169, at *2. But where the district court grants a motion for compassionate release, it must of course address all three steps. *Id.*

## III.

With the benefit of these three decisions, we turn to the issue presented by Quintanilla's appeal: whether the district court abused its discretion by denying his motion for compassionate release. *See Ruffin*, 978 F.3d at 1005.

## A.

Two preliminary observations are in order.

First, we observe that the district court did not err by skipping right to the § 3553(a) factors and denying defendant's motion. *Elias* settles that matter. 2021 WL 50169, at *2.

Second, to the extent that one might conclude *Jones*'s broad assertions about barebones orders favor reversal here, we disagree.

The discussion in *Jones* regarding the insufficiency of so-called barebones orders was not necessary to the court's judgment and is accordingly not binding on later panels. See *Jones*, 980 F.3d at 1116–17 (Cook, J., concurring). The *Jones* decision contains an erudite discussion of the scope of a district court's obligation to explain its weighing of the 18 U.S.C. § 3553(a) factors, a discussion that provides an overview of the relevant law, and provides thoughtful advice to district judges. The *Jones* court held that the explanation in that case was sufficient, and also opined regarding what would not be sufficient. The former was a basis for upholding the lower court judgment, while the latter would be a basis for reversing some different judgment. The former analysis is binding on later panels, but the latter is not.

Taken in isolation, *Jones*'s statements about the propriety of barebones orders are in tension with the Supreme Court's own observations about their use in *Chavez-Meza*. There, the Court explained that a "judge need not provide a lengthy explanation" for reducing a defendant's sentence "if the 'context and the record' make clear that the judge had 'a reasoned basis' for reducing the defendant's sentence." 138 S. Ct. at 1966 (quoting *Rita*, 551 U.S. at 356, 359). It then *condoned* the district court's use of a barebones form order to resolve a sentencing-

modification motion brought under § 3582(c)(2) because it was satisfied that the district court had met that standard. *Id.* at 1967–68. In particular, the Court looked through to the original sentencing proceeding and observed that the district court rejected the defendant's request for a downward variance by emphasizing that the defendant had distributed a "significant quantity" of methamphetamine and that methamphetamine had particularly deleterious effects on that specific community. *Id.* at 1967. Therefore, when the district court later granted defendant's motion for a sentence reduction in a form order, but did not impose the exact sentence the defendant had requested, the Supreme Court concluded that the record as a whole had convinced it "that the judge considered the parties' arguments and had a reasoned basis for exercising his own legal decisionmaking authority." *Id.* (brackets, internal quotation marks, and citation omitted). That is a far cry from *Jones*'s unduly restrictive view that barebones orders are to be "reserved for the simplest of cases" with "thorough record evidence of the [district court]'s factual decisions." 980 F.3d at 1113–14.

B.

We therefore follow the guidance of *Chavez-Meza* and consider whether Quintanilla's request for compassionate release and the district court's denial thereof reflects a "conceptually simple" matter suitable to resolution via a form order. We conclude that it was, and that the district court therefore did not abuse its discretion by denying Quintanilla's motion.

The district court had before it the record of the original proceedings, including a presentence report it adopted in full, the sentencing hearing transcript, and the judgment. It is apparent from the original sentencing records that the district court was concerned that the defendant had been deported from the United States "numerous times"—the presentence report establishes that defendant had voluntarily departed the United States (as opposed to being deported) ten times between 2004 and 2008, and had been deported from the United States six additional times since then. In addition, defendant's convictions for possession with intent to distribute cocaine—for which the presentence report attributed to defendant more than ten kilograms of cocaine—led the district court to remark that the offense conduct was "very serious." Those concerns led the district court to impose a mandatory-minimum ten-year

sentence as outlined in Quintanilla's plea agreement, especially because Quintanilla "doesn't seem to learn his lesson very well."

A little more than two years later, Quintanilla filed his motion for compassionate release and requested that the district court reduce his sentence to time served, excusing him from the remaining seven or so years of his mandatory-minimum sentence. Notably, Quintanilla's motion focused exclusively on establishing that the COVID-19 virus established extraordinary and compelling circumstances under § 3582(c)(1)(A). He did not argue that his personal circumstances—beyond the COVID-19 outbreak—had changed so that the district court should weigh the § 3553(a) factors differently than it had at the original sentencing.

Accordingly, for largely the same reasons cited by the *Chavez-Meza* Court, we are "satisfie[d] . . . that the judge considered the parties' arguments and ha[d] a reasoned basis for exercising [her] own legal decisionmaking authority." 138 S. Ct. at 1967 (second alteration in original) (internal quotation marks and citation omitted). Based on the district court's observations at the original sentencing proceeding that Quintanilla had committed a serious drug-trafficking offense and had not learned his lesson from prior run-ins with law enforcement, "[t]he record as a whole strongly suggests" that the district court's view of the § 3553 factors had not changed by the time of Quintanilla's motion for compassionate release. *Id.* And so, while a more detailed order fleshing out the district court's weighing of the § 3553(a) factors may be desirable as a general matter, and "under different facts and a different record, the district court's use of a barebones form order in response to a motion like [defendant's] would be inadequate," *id.*, we conclude that "given the simplicity of *this* case . . . the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge." *Id.* at 1968.

This conclusion aligns with *United States v. McGuire*, where, on nearly identical facts, we affirmed a district court's denial of compassionate release. 822 F. App'x 479 (6th Cir. 2020). There, we found no abuse of discretion where the district court used precisely the same language to deny McGuire's motion, stating that it had "considered the relevant § 3553(a) factors and policy statements" and conducted a "complete review" of the merits. *Id.* at 480–81. We were unconcerned that the district court "did not specifically cite which factors guided its decision,"

because the circumstances—including the defendant's history of violent crimes and behavior—were such that it "did not need to." *Id.* In other words, "[b]ecause it [was] clear that the judge relied on the record when declining to modify McGuire's sentence," we concluded that "even a 'barebones form order' could have sufficed." *Id.* (quoting *Chavez-Meza*, 138 S. Ct. at 1968). The same can be said for Quintanilla, who like the defendant in *McGuire*, has an extensive criminal history—in addition to his repeated illegal reentries, he has been convicted of reckless driving and driving under the influence several times and arrested for aggravated burglary and assault. *Id.* at 480. And just as in *McGuire*, these facts—among others—made the district court's denial of Quintanilla's motion, and our review thereof, "conceptually simple." *Rita*, 551 U.S. at 359.

IV.

For these reasons, we affirm the district court's order denying Quintanilla's motion for compassionate release.

—————————————

**DISSENT**

—————————————

KAREN NELSON MOORE, Circuit Judge, dissenting. I cannot condone the district court's issuing a single-sentence order to deny Quintanilla's request for compassionate release when a barren record leaves us with nothing to examine on appeal. Nor can I join the majority's discussion of the duty of district courts to explain their factual reasoning in compassionate-release decisions, which bobs alone in a sea of contrary Supreme Court and Sixth Circuit precedent. I dissent.

The majority warps the thoughtful discussion of district courts' "obligation to provide reasons" in sentence-modification decisions contained in *Chavez-Meza v. United States*, — U.S. —, 138 S. Ct. 1959, 1963 (2018). *Chavez-Meza* relied heavily on the Court's earlier decisions in *Rita v. United States*, 551 U.S. 338 (2007), which "set forth the law that governs the explanation requirement at sentencing[,]" *Chavez-Meza*, 138 S. Ct. at 1963 (describing *Rita*), and *Gall v. United States*, 552 U.S. 38 (2007), "which [the Court] decided the same year as *Rita*[,]" *Chavez-Meza*, 138 S. Ct. at 1964 (describing *Gall*). In *Chavez-Meza*, the Court explained that "[a district] judge need not provide a lengthy explanation if the 'context and the record' make clear that the judge had 'a reasoned basis' for reducing the defendant's sentence." 138 S. Ct. at 1966 (quoting *Rita*, 551 U.S. at 356, 359). But the Court continued: "This is not to say that a disproportionate sentence reduction *never* may require a more detailed explanation. It could be that, under different facts and a different record, the district court's use of a barebones form order in response to a motion like petitioner's would be inadequate." *Id.* at 1967. The Court viewed the adequacy of a district court's factual reasoning as a case-specific inquiry. *Id.* ("[O]ur task here is to decide the case before us.").

Observing that the district court considered the § 3553(a) sentencing factors at Chavez-Meza's initial sentencing hearing, the Court concluded that "the [d]istrict [c]ourt's explanation satisfies the standard [that the Court] used in *Rita* and *Gall*." *Id.* at 1966–67. But the Court was clear that its determination turned on the district court's generating a robust record and the case's simplicity:

[G]iven the simplicity of *this* case, the judge's awareness of the arguments, *his consideration of the relevant sentencing factors*, and the intuitive reason why he picked a sentence above the very bottom of the new range, the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge.

*Id.* at 1967–68 (second emphasis added).

So far, all our published compassionate-release decisions have marched in lockstep with *Gall, Rita,* and *Chavez-Meza*.  In *United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020), the record from Ruffin's original sentencing and the district court's compassionate-release decision "more than adequately explained why the § 3553(a) factors did not support a sentence reduction"; thus, we were "satisfie[d]" that the district court "considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority[,]" *id.* at 1008 (quoting *Rita*, 551 U.S. at 356) (alterations and internal quotation marks omitted).  Our reasoning in *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), echoed that of *Ruffin*:  "[r]eading the judge's compassionate release decision and the original sentencing hearing transcript together reveals that the district judge carefully considered all relevant § 3553(a) factors[,]" *id.* at 1115. In *United States v. Elias*, 984 F.3d 516, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the district court cited guidance from the Centers for Disease Control and Prevention, the Bureau of Prison's webpage, and a scientific journal in determining that extraordinary and compelling reasons did not justify compassionate release, *id.* at *4.  Thus, the district court met our "require[ment] that the district judge 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Id.* (quoting *Jones*, 980 F.3d at 1113).

Our recent published decision in *United States v. Hampton*, — F.3d —, No. 20-3649, 2021 WL 164831 (6th Cir. Jan. 19, 2021) is particularly relevant to Quintanilla's case.  In *Hampton*, the district court issued a two-line order denying compassionate release:  "Defendant's Emergency Motion for a Reduction in Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A)(i) is DENIED for the reasons stated in the response brief.  The Defendant has not met the requirements of 18 U.S.C. 3582(c)(1)(A)(i)." *Id.* at *2 (internal citation omitted).  Because the district court "fail[ed] to identify which specific aspect(s) of the government's brief the district

court found compelling," we held that the order deprived Hampton of "meaningful appellate review." *Id.* at \*3 (quoting *Jones*, 980 F.3d at 1116).

In his compassionate release motion, Quintanilla asserted that he is obese and has diabetes, high blood pressure, high cholesterol, and liver damage; he pointed out that the Centers for Disease Control has found that persons with some of Quintanilla's underlying medical conditions are at increased risk for severe illness if they contract COVID-19.  R. 36 (CR Mot. at 3–4) (Page ID #114–15); *see also People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION (Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Quintanilla further explained that he is incarcerated at the Federal Correctional Institution, Oakdale; at the time that he filed his motion, at least 20% of the persons incarcerated at FCI Oakdale had tested positive for COVID-19, and the prison had "the sixth highest number of known Covid-19 cases amongst inmates in BOP prisons."   R. 36 (CR Mot. at 4) (Page ID #115) (footnote omitted); *see also COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 25, 2021) (reporting that 307 incarcerated persons have "recovered" from COVID-19 and eight have died from the virus in the two FCI Oakdale facilities).

The majority's vindication of the district court's skeletal order and scanty record deviates from the Supreme Court and our congruous precedent.  The district court's order consists of *one* sentence that merely states that the court denies compassionate release "after considering the applicable factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission to the extent they are relevant to whether a reduction is warranted[.]"  R. 44 (Dist. Ct. Order at 1) (Page ID #269).  The judge did not expressly consider any of Quintanilla's many arguments in favor of compassionate release.  R. 34 (CR Mot. at 1) (Page ID #108); R. 36 (CR Mot. at 1) (Page ID #112); R. 40 (Medical Records at 1) (Page ID #174); R. 43 (Reply at 1) (Page ID #240).  Nor did the court provide any reasoned basis for denying compassionate release.  In short, the district court supplied not one factual reason for its consideration—if you could call it that—of § 3582(c)(1)(A)'s substantive requirements.

Looking through to the record from the original sentencing proceeding does not aid our review in the present case.  The initial sentencing record consists of three documents:

the presence report, R. 47 (PSR at 1) (Page ID #274); the sentencing hearing transcript, R. 28-1 (Sent'g Hr'g Tr. at 1) (Page ID #71); and the district court's sentencing judgment, R. 27 (Dist. Ct. J. at 1) (Page ID #60). Because the district judge accepted Quintanilla's binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), R. 25 (Def.'s Sent'g Mem. at 1) (Page ID #56); R. 28-1 (Sent'g Hr'g Tr. at 2–3) (Page ID #72–73), the judge did not need to explain in detail the § 3553(a) factors in the sentencing hearing. At the hearing, the district judge recited the titles of the § 3553(a) factors. *Compare* 18 U.S.C. § 3553(a), *with* R. 28-1 (Sent'g Hr'g Tr. at 3) (Page ID #73).[1] Otherwise, the judge briefly acknowledged only Quintanilla's educational and familial background. R. 28-1 (Sent'g Hr'g Tr. at 3) (Page ID #73). The judgment is the standard judgment form. R. 27 (Dist. Ct. J. at 1–7) (Page ID #60–66). Of course, the judge did not need to say more in a routine sentencing proceeding for a defendant who accepts a Rule 11(c)(1)(C) plea bargain. But the lean record from Quintanilla's initial sentencing obliges the district court to say more than one sentence when denying Quintanilla's § 3582(c)(1)(A) motion.

The majority exaggerates the relevance of the unpublished decision *United States v. McGuire*, 822 F. App'x 479 (6th Cir. 2020). Yes, in *McGuire*, we affirmed a one-sentence order that is as terse as the one in the present case. But the majority ignores how the district court in *McGuire* weighed the § 3553(a) factors during McGuire's initial sentencing hearing. No. 2:11-cr-00003, R. 340 (Sent'g Hr'g at 6–15) (Page ID #1134–43). Because the district court built a lengthy record in the underlying proceedings, the panel majority concluded that the district judge did not need to articulate his factual reasons further when McGuire submitted his motion for compassionate release. Quintanilla's judge, in comparison, generated next-to-no record in Quintanilla's original proceeding and no record whatsoever in considering Quintanilla's § 3582(c)(1)(A) motion.

In short, I am troubled on two fronts. By leaving us "[a] record that is all bones and no meat," the district court has "starve[d] [Quintanilla] of meaningful appellate review." *Jones*,

---

[1]"I believe this sentence will comply with all the purposes of the sentencing statute. It will reflect the seriousness of the offense, promote respect for the law, be a just punishment, protect the public from further crimes of the defendant, and it will not create unwarranted sentencing disparities because it is a guideline sentence." R. 28-1 (Sent'g Hr'g Tr. at 3) (Page ID #73).

980 F.3d at 1116. Further, the majority elevates a patchwork of out-of-context dicta from *McGuire*—an unpublished opinion—over the thorough explanation of district courts' obligation to explain contained in three Supreme Court decisions (*Gall*, *Rita*, and *Chavez-Meza*) and four of our published compassionate-release precedents (*Ruffin*, *Jones*, *Elias*, and *Hampton*).**2** It is not our place to ignore precedent and push our own agenda. *See Miller v. Caudill*, 936 F.3d 442, 447–48 (6th Cir. 2019) ("[P]ublished precedent binds all future panels unless (1) we overrule it as an en banc court or (2) it conflicts with intervening United States Supreme Court precedent and thus requires modification.").

We ought not condone the district court's single-sentence dismissal of Quintanilla's compassionate-release motion, and I refuse to break the chain of our otherwise harmonious published compassionate-release case law. I dissent.

---

**2**Our unpublished decisions about compassionate release and similar sentence-modification proceedings further counsel our remanding this case for further proceedings.

In *United States v. Thompson*, 832 F. App'x 436 (6th Cir. 2020), we cited *Jones*, *Gall*, and *Chavez-Meza* when explaining district courts' duty to explain their factual reasoning in compassionate-release decisions, *id.* at 437–38.

*United States v. Latham*, 809 F. App'x 320 (6th Cir. 2020), involved an incarcerated person's seeking a sentence modification pursuant to 18 U.S.C. § 3582(c)(1)(B), which, of course, immediately follows § 3582(c)(1)(A), the compassionate-release provision. In *Latham*, the district judge's sentence-modification order "simply recited (in preprinted language) that the court had considered the relevant sentencing factors and that Latham's new sentence was within his revised Guidelines range." *Latham*, 809 F. App'x at 321. At Latham's original sentencing hearing, "the court noted that Latham had 'a significant criminal record,' that Latham was subject to a mandatory life sentence, and that, absent that mandate, the court would have imposed a lesser sentence." *Id.* at 322. The *Latham* court reasoned: "[o]n this record, that left no explanation—either explicit or implicit—as to why the [district] court rejected Latham's arguments that he was entitled to a sentence of less than 360 months." *Id.* Reasoning that the "record as to both [the original- and modified-sentence proceedings] is exceedingly slim[,]" the *Latham* court determined that the district judge had failed to satisfy its duty to "'adequately explain the chosen sentence to allow for meaningful appellate review.'" *Id.* at 321–22 (quoting *Gall*, 552 U.S. at 50). Accordingly, the *Latham* court vacated the sentence-modification decision and remanded for further proceedings. Just like the order that we review here, the *Latham* judge's sentence-modification order merely acknowledged the existence of the pertinent statutory factors. In Latham's original sentencing hearing, the district judge considered Latham's criminal history and his mandatory minimum. Here, the judge arguably did *less* in Quintanilla's initial sentencing hearing. Again, the judge merely recited the § 3553(a) factors' titles and cursorily acknowledged Quintanilla's educational and familial background. At bottom, the record in this case is as skeletal as the one that we deemed "exceedingly slim" in *Latham*.