RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee*,

    *v.*

LAMONT HARVEY,

                    *Defendant-Appellant*.

No. 20-1944

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cr-20589-2—Mark A. Goldsmith, District Judge.

Decided and Filed:  April 28, 2021

Before:  STRANCH, LARSEN, and NALBANDIAN, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  Ryan Hugh Machasic, RYAN H. MACHASIC, P.C., Detroit, Michigan, for Appellant.  Amanda Jawad, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

The court delivered a PER CURIAM opinion.  STRANCH, J. (pp. 7–10), delivered a separate opinion concurring in the judgment.

───────────────

**OPINION**

───────────────

PER CURIAM.  Lamont Harvey appeals the district court's denial of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  We affirm.

# I.  BACKGROUND

In 2016, Harvey pleaded guilty to a charge of distributing a controlled substance under 21 U.S.C. § 841(a)(1) and (b)(1)(C).  He was sentenced to 156 months' imprisonment and three years' supervised release.  Harvey then filed a § 2255 motion claiming ineffective assistance of counsel.  The case was reassigned to a different judge, who denied the motion.  We affirmed. *Harvey v. United States*, 798 F. App'x 879 (6th Cir. 2020).

On June 12, 2020, Harvey filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Arguing that "[t]he ongoing coronavirus pandemic presents extraordinary and compelling reasons where a defendant is susceptible to infection," he cited his "chronic bronchitis" (which had previously "required emergency intervention") and the spread of COVID-19 cases at the facility in which he was incarcerated at the time as justifying release.  He also noted that he was a "non-violent offender" and "had no disciplinary actions against him at the BOP."

After the Government filed a response in opposition, and Harvey filed a reply, the district court denied Harvey's motion on September 17, 2020.  The district court did not hold a hearing. It used a one-page form order to deny Harvey's motion.  The form stated "[u]pon renewed motion of Defendant (Dkt. 87) for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED THAT the motion is . . . ." It then listed four check boxes labeled:  (1) "GRANTED," (2) "DEFERRED pending supplemental briefing . . . ," (3) "DENIED after complete review of the motion on the merits," and (4) "DENIED WITHOUT PREJUDICE because Defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of Defendant's request by the warden of Defendant's facility."  The district court checked box (3).

Harvey timely filed a notice of appeal on September 28, 2020.  About three weeks later, on October 21, 2020, the district court filed a five-page document titled "OPINION SETTING FORTH THE REASONS FOR DENYING DEFENDANT LAMONT HARVEY'S MOTION

FOR COMPASSIONATE RELEASE." The document stated that "[t]he Court is entering this Opinion to set forth its findings and analysis in support of" the form order. In outlining the legal standard it would apply, the district court asserted that its discretion to consider extraordinary and compelling reasons justifying release was circumscribed by the list in USSG § 1B1.13. And the court decided that "[a] reduction in sentence would not have been consistent with the policy statements issued by the Sentencing Commission." The district court also discussed Harvey and the Government's arguments about whether the § 3553(a) factors weighed in favor of release, concluding (in one paragraph) that they did not. It also noted that Harvey had satisfied the exhaustion requirement.

## II. ANALYSIS

We first address the effect of the district court's post-appeal opinion. The parties disagree about whether we can or should take the opinion into account in determining whether the district court sufficiently explained the denial of Harvey's compassionate release motion. Harvey maintains that the district court was without jurisdiction to file the opinion altogether. We agree.

Typically, "filing a notice of appeal with the district court divests the district court of jurisdiction to act in a case, except on remedial matters unrelated to the merits of the appeal." *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res.*, 71 F.3d 1197, 1203 (6th Cir. 1995); *see also* 6 Charles A. Wright et al., *Federal Practice and Procedure* § 1489 (3d ed. Apr. 2021 update) ("Once an appeal has been taken from the judgment, the district court no longer has jurisdiction over the case and cannot reopen the judgment to allow an amendment to be made.").

In other words, "expansion of a district court's judgment [is] not permitted while an appeal is pending." *NLRB. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). We have interpreted this rule to except certain actions taken "in aid of the appeal," a "narrowly defined" set that "includes issuance of an opinion that memorializes an oral ruling made days before." *United States v. Sims*, 708 F.3d 832, 834 (6th Cir. 2013) (quoting *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003)). But we have also noted that "appellate courts have generally prevented trial courts from developing supplemental findings

after the notice of appeal has been filed." *Inland Bulk Transfer*, 332 F.3d at 1013 (collecting cases).

The district court's opinion—filed 23 days after the notice of appeal *and* eight days after Harvey filed his brief in this case—does not fall within an exception to the rule. There was no oral ruling to memorialize. And even if there had been, the district court waited weeks, not days, to provide a fuller explanation for its ruling. Given that Harvey argued on appeal precisely that the form order was insufficient, before the district court filed its opinion, that opinion was an "action[] that alter[ed] the case on appeal" and not one that "merely aid[ed] the appellate process." *Inland Bulk Transfer*, 332 F.3d at 1013 (quoting Allan Ides, *The Authority of a Federal District Court to Proceed after a Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 323 (1992)).

Moreover, the court's opinion was not a "remedial matter[] unrelated to the merits of the appeal." *Fort Gratiot Sanitary Landfill*, 71 F.3d at 1203. Instead, the court used the opinion to "set forth its findings and analysis in support of" its earlier order. *See Inland Bulk Transfer*, 332 F.3d at 1013 (noting that appellate courts generally prevent district courts from "developing supplemental findings" after a party has filed a notice of appeal). So the opinion is "null and void" because the district court did not have jurisdiction to file it, and we cannot consider it. *United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984) (quoting *Keohane v. Swarco, Inc.*, 320 F.2d 429, 432 (6th Cir. 1963)). This conclusion resolves the Government's argument that "there would be little reason to remand only for a more thorough explanation here, now that the district court has already given one."

We turn next to the merits of Harvey's challenge. Harvey argues that the district court's form order here was insufficient and thus procedurally defective, and that the district court abused its discretion in denying his motion. In reviewing the district court's decision, we "must apply the law in effect at the time [we] render[ our] decision," *Henderson v. United States*, 568 U.S. 266, 276 (2013) (quoting *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969)), and since the district court's September 17, 2020, order, that law has changed significantly. "For thirty-four years, only the BOP's Director could file motions for compassionate release," and "the Director seldom wielded this significant power." *United States v. Jones*, 980 F.3d 1098,

1104 (6th Cir. 2020). In an effort "to boost grants of compassionate release," Congress passed the First Step Act of 2018, which allows incarcerated people to file motions for compassionate release themselves so long as they exhaust their administrative remedies or wait 30 days after the warden's receipt of a compassionate release request (whichever comes first). *Id.* at 1104–05; *see also United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).

Last year, we clarified that "sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry: [(1)] district courts must 'find' both that 'extraordinary and compelling reasons warrant [a sentence] reduction' and that [(2)] 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' before [(3)] considering all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Jones*, 980 F.3d at 1101 (second alteration in original) (footnote omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Ruffin*, 978 F.3d 1000, 1004–05 (6th Cir. 2020). And we held that for purposes of the third requirement, USSG § 1B1.13 "is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

So without an applicable policy statement, district courts have significant, though not unlimited, discretion to define "extraordinary and compelling" reasons for relief "on their own initiative." *Elias*, 984 F.3d at 519–20. And "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519. No matter the basis, we review these decisions for abuse of discretion. *Jones*, 980 F.3d at 1112.

In *United States v. Quintanilla Navarro*, we dealt with a nearly identical form order. 986 F.3d 668, 669 (6th Cir. 2021). And we affirmed. We noted that Quintanilla Navarro's case was conceptually simple. *Id.* at 671. He had been deported from the United States multiple times; he had been convicted of a serious drug trafficking crime; and his previous run-ins with law enforcement did nothing to deter later criminal behavior. *Id.* at 671–72. So we were "satisfied that the judge considered the parties' arguments and had a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 672 (cleaned up) (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018)).

Then, in *United States v. Kimball*, 988 F.3d 945 (6th Cir. 2021) (per curiam), we discussed another form order denying compassionate release of nearly identical wording and brevity to our order here and the order in *Quintanilla Navarro*. We identified certain facts from our decision on Kimball's direct appeal and statements the district court made at his resentencing, such as that "he was the 'undisputed kingpin and mastermind' of a 'massive cocaine-trafficking conspiracy'" who had "attempt[ed] to kill witnesses." *Id.* at 947 (quoting *United States v. Parker*, 341 F. App'x 122, 124–25 (6th Cir. 2009)). "Based on this record," we stated, "the district court could reasonably have determined that releasing Kimball now would not serve the statutory sentencing goals." *Id.* That was true even though a different judge decided Kimball's motion than sentenced him.

Likewise for Harvey. The form order here resembles the orders we approved in *Quintanilla Navarro* and *Kimball*. So it was not necessarily procedurally defective, as Harvey argues. And like in *Kimball*, facts in the record provide a reasonable basis for the district court's ultimate decision to deny Harvey's motion. Harvey admitted "that he had been selling drugs for over a year"; the prosecutor asserted at sentencing that Harvey's house contained "a gun" and "ammunition"; Harvey's plea agreement recognized four earlier drug-related convictions, and the presentence report listed two others; and when he filed his motion for compassionate release, he had served only about 25% of his custodial sentence. Although a different judge sentenced Harvey than decided his motion, the same was true in *Kimball*, and the record here can be read to support the district court's conclusion that the § 3553(a) factors do not favor Harvey's release.

### III. CONCLUSION

We cannot confidently say on this record that the district court "relie[d] on clearly erroneous findings of fact, applie[d] the law improperly, or use[d] an erroneous legal standard" when weighing the § 3553(a) factors. *Jones*, 980 F.3d at 1112 (quoting *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010)). Accordingly, we affirm the district court's order.

---

## CONCURRENCE

---

JANE B. STRANCH, Circuit Judge, concurring in the judgment.  I concur in the judgment based on our binding precedent in *United States v. Kimball*, 988 F.3d 945 (6th Cir. 2021).  I write separately to express my concerns regarding our compassionate release jurisprudence.

Our cases, in this sentencing context and others, have emphasized that "[t]he district court is best situated to balance the § 3553(a) factors." *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020) (quoting *United States v. Kincaid*, 802 F. App'x 187, 189 (6th Cir. 2020)); *see also, e.g.*, *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020); *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019)) ("Of course, we must respect the district court's reasoned discretion to weigh the factors 'to fashion individualized, fact-driven sentences without interference from appellate courts.'").  As the Supreme Court has stated, important "[p]ractical considerations . . . underlie this legal principle." *Gall v. United States*, 552 U.S. 38, 51 (2007).  "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case" because she "sees and hears the evidence, makes credibility determinations, has full knowledge of the facts[,] and gains insights not conveyed by the record." *Id.*  She "has access to, and greater familiarity with, the individual case and the individual defendant before [her] than the [Sentencing] Commission or the appeals court." *Id.* at 51–52 (quoting *Rita v. United States,* 551 U.S. 338, 357–58 (2007)).  And in general, "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do." *Id.* at 52 (alteration in original) (quoting *Koon v. United States,* 518 U.S. 81, 98 (1996)).

Under this sentencing framework, our recent compassionate release cases have discussed the contours of a district court's obligation to explain its decision.  In *Jones*, we stated that it must provide "a thorough factual record for our review" containing the "specific factual reasons,

including but not limited to due consideration of the § 3553(a) factors," for its decision. 980 F.3d at 1112 (quoting *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)). Drawing on the Supreme Court's reasoning, we affirmed that the district judge must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 1113 (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018)). What "enough" means, however, is "highly dependent on 'context and the record.'" *Id.* (quoting *Chavez-Meza*, 138 S. Ct. at 1964). If we consider the case to be "conceptually simple," and we find that "the sentencing judge considered the evidence and arguments," then the law does not necessarily "require[] the judge to write more extensively." *Chavez-Meza*, 138 S. Ct. at 1964 (quoting *Rita*, 551 U.S. at 359). However, there are many situations—again, contextually contingent—in which more explanation may well be warranted. One of these is "when the original sentencing judge and the compassionate release decision judge are different persons, as the original sentencing transcript does not reflect the latter judge's factual reasons for their § 3582(c)(1)(A) decision." *Jones*, 980 F.3d at 1113–14; *see also United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021); *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020).

Our cases have not spoken with one voice about whether an "exceedingly slim" record and/or the district court's use of a "barebones form order" is ever appropriate in this context. *Jones*, 980 F.3d at 1114 (first quoting *United States v. Latham*, 809 F. App'x 320, 322 (6th Cir. 2020); then quoting *Chavez-Meza*, 138 S. Ct. at 1967). *Jones* stated that:

> Absent thorough record evidence of the judge's factual decisions, district courts should not issue single-sentence or otherwise exceedingly slim compassionate release decisions or cite § 1B1.13 or the § 3553(a) factors without any analysis of their requirements. In most circumstances, "[a] district court's use of a barebones form order . . . would be inadequate."

*Id.* (alterations in original) (quoting *Chavez-Meza*, 138 S. Ct. at 1967). Later, in *United States v. Quintanilla Navarro*, we instead applied a reduced formulation of these principles after discussing *Jones*:

> We . . . follow the guidance of *Chavez-Meza* and consider whether [the defendant's] request for compassionate release and the district court's denial

thereof reflects a "conceptually simple" matter suitable to resolution via a form order.

986 F.3d 668, 671 (6th Cir. 2021) (quoting *Rita*, 551 U.S. at 359).

*Quintanilla Navarro* involved a denial of a motion for compassionate release "in a form order, stating that it had considered the applicable § 3553(a) factors and policy statements and conducted a 'complete review' of the merits." *Id.* at 669. It included two important facts: the district court judge addressing the motion had originally sentenced Quintanilla Navarro, and he did not argue for a different weighing of the § 3553(a) factors in his motion for release. *Id.* at 672. Looking as well to his "extensive criminal history," we concluded that the matter was "conceptually simple"—even though "a more detailed order fleshing out the district court's weighing of the § 3553(a) factors may be desirable as a general matter"—and so affirmed the district court's form order. *Id.*

What do these cases tell us? First, that it is the job of district courts, not appellate courts, to weigh the § 3553(a) factors in the first instance. Second, that even in a "conceptually simple" matter, the sentencing judge is nevertheless obligated to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Chavez-Meza*, 138 S. Ct. at 1965 (quoting *Rita*, 551 U.S. at 356). There may be some cases with enough evidence in the entire record that appellate judges can safely deduce the district court's reasoning—for instance, some of those in which the sentencing judge and the compassionate release judge are the same. But those are and should be edge cases, the exceptions rather than the rule. Otherwise, this court would be supplanting the proper role and duty of the district court judge.

With these principles in mind, it is not clear to me that *Kimball* avoided that pitfall. The opinion picked from facts strewn throughout the record to guess what the district court's reasoning might have been. It weighed aggravating and mitigating evidence. It concluded that "Kimball's attempt to minimize the gravity of his conduct is not persuasive." 988 F.3d at 947. Aren't these each a determination that the district court is best situated to make? And because the sentencing judge and the compassionate release judge were different people, it seems a stretch to assume that their reasoning was so safely identical as to obviate the need for the latter

judge to explain further.  *See Rita,* 551 U.S. at 349 ("[D]ifferent judges . . . can differ as to how best to reconcile the disparate ends of punishment.").  I am concerned that our court should not be in the business of investigating what "the district court could reasonably have determined." *Kimball*, 988 F.3d at 947.  Isn't our job, instead, to review what the district court actually determined?  *Kimball* leaves this question both unasked and unanswered.

When we substitute our own judgment for that of the district court, we also undermine the expansive discretion that our cases afford district courts in this context.  "Our trust in the discretion of the district court must be consistent regardless of whether the district court grants or denies an incarcerated person's motion." *United States v. Bass*, No. 21-1094, --- F. App'x ----, 2021 WL 476467, at *5 (6th Cir. Feb. 5, 2021) (Stranch, J., dissenting).  And when the district court does not do its job, we should not "enshrin[e] a double standard unduly favoring the Government's opposition to compassionate release." *Id.*  After all, Congress intended to "expand compassionate release," not constrain it. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *see also Jones*, 980 F.3d at 1104–05.  This is critical in the context of the COVID-19 pandemic:  "[a] court's refusal to reduce an incarcerated person's sentence could result"—and frequently has resulted—"in death." *United States v. Mathews*, No. 20-1635, --- F. App'x ----, 2021 WL 855834, at *1 (6th Cir. Mar. 8, 2021).

So, for these reasons and those my colleagues have elucidated, I agree that "[w]e ought not condone" cursory dismissals of motions for compassionate release. *Quintanilla Navarro*, 986 F.3d at 676 (Moore, J., dissenting).  I am sympathetic to the workloads of district courts and the number of motions for compassionate release.  But in light of Supreme Court and Sixth Circuit precedent, it seems to me that the parties and the public deserve an actual explanation from the courts.  I don't think Mr. Harvey's form provides that explanation.  Because *Kimball* is nevertheless binding, I reluctantly concur in the judgment.