NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0355n.06

Case No. 21-1253

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 20, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| STEVEN D. DENT, aka James Walker, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) ) | |

BEFORE:     COLE, ROGERS, and MURPHY, Circuit Judges.

ROGERS, Circuit Judge.  In 2013, Steven Dent pleaded guilty to conspiracy to distribute cocaine and was sentenced to the mandatory-minimum term of 20 years' imprisonment.  When COVID-19 reached his prison facility, Dent filed a motion for compassionate release, arguing that his pre-existing health conditions, coupled with the fact that the First Step Act reduced the statutory minimum sentence for similar offenses, were extraordinary and compelling reasons that warranted his early release.  Dent also argued that the 18 U.S.C. § 3553(a) factors favored release because he had not incurred any infractions in prison and had taken steps to complete his education.  The district court rejected each of these arguments in a thoughtful opinion.  The court's application of the § 3553(a) factors alone provides a sufficient basis to conclude that the district court did not abuse its discretion.

The underlying conviction at issue stems from a series of events in 2007 and 2008.[1] In March 2007, Steven Dent was pulled over by the Michigan State Police. While stopped, Dent presented a fake driver's license containing a different name to the trooper, who became suspicious and attempted to arrest Dent. Dent unsuccessfully tried to flee the scene and, in the process, dragged a trooper beside his vehicle. The police were able to stop and secure Dent, after which they searched Dent's car and found 12.95 kilograms of cocaine. Dent was arrested and charged with drug trafficking by the state of Michigan.

After Dent was released from custody, he wanted to ensure that he would continue receiving his supply of drugs. About one year later, DEA agents—who had been observing Dent and monitoring his cell phone—believed Dent would be acquiring a half-kilogram of heroin or cocaine. In June 2008, Dent was stopped by a Michigan sheriff's department as he traveled from Indiana back to Michigan, where he intended to distribute the 472 grams of heroin he had picked up in Indiana. On June 20, authorities executed a search warrant at an apartment associated with Dent and seized a digital scale, a kilogram press, and pink "Dormin" capsules, often added to heroin as a cutting agent. Authorities also found Western Union money order receipts for amounts ranging from $1.64 to $1,000.

Although Dent had indicated he would cooperate with law enforcement's investigation, he instead fled the state and was found in Arizona living under an alias four years later. Dent was indicted for two counts of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846; one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841; and more than one hundred counts of laundering of monetary instruments, in

---

[1] The facts in the following three paragraphs are summarized by the government in its brief, with citations to the Presentence Report, and also summarized by the district court in its opinion declining to issue a certificate of appealability after denying Dent's habeas motion. These facts are not disputed by Dent in this appeal.

violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) & (ii). In August 2013—after Dent had been captured and initially pleaded not guilty to the offenses—Dent changed his plea to guilty to one count of conspiracy to distribute cocaine as part of a Rule 11 Plea Agreement. The remaining counts were dismissed.

Given Dent's lengthy history of prior drug convictions, the government had the opportunity to seek a mandatory minimum sentence of life imprisonment. Instead, as part of the plea agreement, the government filed an information regarding prior convictions under 21 U.S.C. § 851(a), citing only one of his prior convictions (instead of identifying his two prior drug offenses). This subjected Dent to a mandatory-minimum term of imprisonment of only twenty years rather than life, and the government did not seek a higher sentence. The sentencing judge held two hearings in March and April 2014 and sentenced Dent to 240 months' imprisonment. This sentence was substantially lower than Dent's Guidelines range of 262 to 327 months' imprisonment.

Dent filed a pro se motion for compassionate release in late 2020. As relevant to this appeal, Dent argued that extraordinary and compelling reasons warranted his release, citing the "escalating COVID-19 crisis" in federal prisons and his underlying health conditions—diabetes and obesity. Dent further argued that the § 3553(a) factors favored his release, emphasizing his incident-free prison record and his efforts to complete educational programs. The motion was referred to a different judge than the sentencing judge, who then appointed counsel to represent Dent and directed the government to respond.

The government agreed that Dent's medical records establish he has type 2 diabetes and obesity and that his circumstances thus qualify as "extraordinary." It noted, however, that Dent's diabetes was "well controlled" and that in his compassionate release request to the Bureau of

Prisons (BOP), Dent had described himself as "healthy." The government disputed that Dent's circumstances qualified as "compelling," pointing to Dent's history of fleeing from law enforcement. It also argued that Dent's description of prison conditions was outdated and that the risk of contracting COVID-19 had decreased; at the time the government filed its response, the prison in which Dent is housed, FCI Elkton, "report[ed] 3 positive inmate cases among a population of over 1000 inmates." The government also argued that the § 3553(a) factors weighed against compassionate release, pointing to Dent's "long remaining sentence" and the fact that Dent could have been sentenced to life based on his criminal history. Dent, through appointed counsel, filed a reply arguing the district court had the discretion to determine what constitutes an "extraordinary and compelling" circumstance. As part of this analysis, Dent's counsel argued, the court should consider that Dent would face only a 15-year mandatory-minimum sentence if he were sentenced today. Counsel elaborated on Dent's health risks at Elkton and highlighted Dent's progress in prison in an effort to show that Dent is no longer dangerous and is at a low risk of recidivism.

The district court acknowledged the government's concession that obesity and type 2 diabetes increase the risk of complications for individuals who may contract COVID-19. It concluded, however, that despite such risk factors, Dent did not show that his circumstances were extraordinary and compelling because "the overall picture of the pandemic's progress at his facility has altered the landscape from one that was even very recently much more alarming, to a situation that is at present decidedly less so." The court found that the likelihood of a severe outbreak had been diminished and would continue to diminish as the BOP maintains its "rapid deployment of newly available vaccines, which so far have been administered fully to 175 staff and 21 inmates [at] Elkton." Alternatively, the court held, even if Dent had shown extraordinary and compelling

circumstances, the § 3553(a) factors weighed heavily against his release. The court emphasized the seriousness of the offense, noting that Dent not only had 13 kilograms of cocaine in his car when he was stopped in 2007, but also provided the police with a false identification, attempted to flee, and dragged one of the officers alongside the car. The court was also troubled by Dent's lengthy criminal history, which included crimes committed even while Dent was under supervision and "prior serious drug felonies." Referring to the record at the initial sentencing, the court noted that Dent's sentence "was driven by the 20-year mandatory minimum term" and the goal of protecting the public. To permit Dent to serve less than half of his sentence would, the court reasoned, "undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who repeatedly has shown his willingness to flout the law." The court concluded that Dent did not meet his burden of showing that compassionate release is justified.

Dent appeals, challenging the district court's risk determination as clearly erroneous and the district court's analysis under the § 3553(a) factors. Because the district court's § 3553(a) analysis is independently sufficient to affirm, we do not address Dent's arguments regarding the degree of medical risk or whether his circumstances are extraordinary or compelling. As we held in *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020), we may affirm the denial of compassionate release on the basis of the § 3553(a) factors alone.

The district court considered the relevant § 3553(a) factors, including Dent's "history and characteristics," before concluding that they "weigh[] heavily . . . against granting any reduction in sentence" and "foreclose relief." The court first described the circumstances surrounding the offense of conviction, characterizing the crime as "serious." The court then observed that it "was only one episode of an extensive criminal history" and that Dent "has a history of committing other crimes while on parole or supervision." Indeed, the court emphasized that Dent's history contained

offenses "that featured prior prison terms of up to 40 years for other drug crimes." Although the court did not explicitly list "history and characteristics" as a specific prong, it clearly weighed such factors.

The court then explained the other § 3553(a) factors it found to be relevant: It recognized that the initial sentence of 240 months' imprisonment "was driven by the 20-year mandatory minimum term" and was necessary to protect the public. It also thoughtfully explained how "[r]educing [Dent's] sentence to less than half of that mandatory minimum term" "would undermine the goals of both specific and general deterrence," particularly given Dent's repeated offenses.

While the court could have said more, its analysis was certainly sufficient to avoid being an abuse of discretion. An abuse of discretion occurs when the district court commits a clear error of judgment or "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007)), *reh'g denied* (July 31, 2020). We do not mandate that district courts "issue exhaustive opinions"; in fact, "even in the original sentencing context," we require only that the district court "leave enough of a record 'to allow for meaningful appellate review.'" *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020) (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018)). The district court has done so here. It explained that it remains concerned by Dent's lengthy history of serious infractions and inability to follow the law even while on supervised release. Dent's attempts to evade the police and his fleeing to Arizona speak volumes here. The district court obviously did not find Dent's recent progress in prison compelling, particularly as "his past criminal conduct and his repeated

commission of other crimes while under supervision cast grave doubt on his inclination to be law abiding and conform to the norms of society." This is not a "barebones" analysis.

Indeed, we have held that a mere one-sentence order denying release is not necessarily an abuse of discretion. *United States v. Quintanilla Navarro*, 986 F.3d 668, 671 (6th Cir. 2021); *United States v. McGuire*, 822 F. App'x 479, 479–80 (6th Cir. 2020). In cases where it was "clear that the judge relied on the record when declining to modify [the defendant's] sentence, even a 'barebones form order' . . . suffice[s]." *McGuire*, 822 F. App'x at 480 (quoting *Chavez-Meza*, 138 S. Ct. at 1968); *see also Keefer*, 832 F. App'x at 364. It is true that in these cases the sentencing judge was the judge later denying compassionate release, so that if this were a "barebones" order case, we might not have sufficient confidence that the later judge properly took into account the factors relied upon by the sentencing judge. But this case is not a "barebones" case, and the second district court, in its careful analysis, referred specifically to the record before the sentencing judge.

Dent argues in particular that the district court was required to respond explicitly to his arguments regarding his good conduct in prison. This was not necessary as long as it is clear enough from the record that the court took such conduct into account. *See Quintanilla Navarro*, 986 F.3d at 672; *McGuire*, 822 F. App'x at 480. A "district court does not abuse its discretion simply by failing to explicitly address each individual argument put forward by the defendant in support of a sentence reduction." *United States v. Rafidi*, 842 F. App'x 1017, 1023 (6th Cir. 2021) (citing *Chavez-Meza*, 138 S. Ct. at 1967); *see also United States v. Greene*, 847 F. App'x 334, 338 (6th Cir. 2021). The Supreme Court, in *Chavez-Meza*, affirmed the denial of a motion for resentencing, even where the district court's barebones form order did not expressly address the petitioner's arguments related to the classes he had taken in prison. 138 S. Ct. at 1967. We too have repeatedly affirmed denials of compassionate-release motions where the district courts did

not respond to defendants' arguments related to rehabilitative progress and post-conviction conduct. *See, e.g.*, *Rafidi*, 842 F. App'x at 1023; *United States v. Hogg*, No. 20-1846, 2021 WL 2209846, at *2 (6th Cir. June 1, 2021); *United States v. Taylor*, No. 20-4241, 2021 WL 2182320, at *2–3 (6th Cir. May 28, 2021).

Here, as in *McGuire* and *Quintanilla Navarro*—where the district court had made cursory statements that it had "considered petitioner's motion and had taken into account . . . the § 3553(a) factors"—"[t]here is no evidence that the court brushed aside" Dent's arguments. *McGuire*, 822 F. App'x at 480 (citation omitted); *see also Quintanilla Navarro*, 986 F.3d at 672. In fact, the district court's appointment of defense counsel suggests that it sought a thorough treatment of the merits, and we have no reason to assume otherwise. *See McGuire*, 822 F. App'x at 480. The court made clear that it found that Dent's "serious drug crimes" and the fact that he "had served less than half of [his] custodial term[]"weighed against release, concluding that the record contains "no facts" that warrant a different result.

Finally, Dent argues that the district court abused its discretion in not considering the fact that the First Step Act reduced the minimum sentence for his crime of conviction. While the briefing on this issue is not clear, Dent's argument appears to be that the combination of the non-retroactive sentence reduction, along with his medical conditions and rehabilitative efforts, constitutes extraordinary and compelling circumstances. Because we are affirming on the basis of the district court's analysis of the § 3553(a) factors, we need not address this argument (or whether it is foreclosed by our recent opinion in *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021)). In any event, even if we construe Dent's argument here to be that the district court failed to consider the impact of a reduced sentence in analyzing the § 3553(a) factors, this argument fails. First, Dent's argument below, as developed through counsel, was that the First Step Act sentencing

changes made his circumstances extraordinary and compelling; he did not explain how the First Step Act should affect the court's consideration of the § 3553(a) factors. Thus, it cannot be said that the district court neglected to consider Dent's arguments as they might apply to § 3553. Moreover, the possible relevance of the First Step Act's changes may be in analyzing whether the sentence reflects the seriousness of the offense, affords adequate deterrence, or protects the public, *see Jarvis*, 999 F.3d at 445, and all of these were fully considered by the district court. Although the court did not mention the First Step Act's reduced sentence in the portion of its opinion discussing the § 3553(a) factors, it still determined that based on the individual facts of Dent's offense and Dent's criminal history—which features crimes with sentences of up to 40 years—a decrease in Dent's sentence is unwarranted.

The judgment of the district court is affirmed.