RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 20-2102

WARD WESLEY WRIGHT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:96-cr-80876-3—Stephen J. Murphy, III, District Judge.

Decided and Filed:  March 23, 2021

Before:  SILER, THAPAR, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  James W. Amberg, AMBERG & AMBERG, PLLC, Royal Oak, Michigan, for Appellant.  Timothy P. McDonald, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

THAPAR, Circuit Judge.  Ward Wright trafficked cocaine, stole airplanes for the Medellín Cartel, and murdered a man for $50,000.  A jury convicted him of murder for hire and conspiring to distribute cocaine.  The court then sentenced him to life imprisonment.  With less than twenty years under his belt, Wright sought compassionate release based on his deteriorating health and the COVID-19 pandemic.  The district court denied his request.  We affirm.

I.

Ward Wright was a member of a motorcycle gang in Michigan. He began distributing cocaine through his gang connections. When one of Wright's co-conspirators (David Moore) had a falling out with other members of the conspiracy, Wright offered to kill him for $50,000. The co-conspirators accepted Wright's offer. So he drove to Ohio and shot Moore twice in the head while he slept. Wright and his co-conspirators then used a welding torch to destroy evidence, which they dumped into Lake Huron.

After the murder, Wright helped steal several airplanes. Why? Because he (and his co-conspirators) had stolen drugs belonging to the Medellín Cartel. And he needed to repay them. Planes seemed to do the trick, including one from the United States Forestry Service.

Federal agents eventually caught on to the conspiracy and arrested Wright and his co-conspirators. The co-conspirators cooperated; Wright did not. A jury convicted Wright of murder for hire, interstate travel in aid of a violent crime, and conspiracy to possess with intent to distribute and to distribute cocaine. The district court sentenced him to two terms of life imprisonment, plus five years.

Nineteen years into his sentence, Wright moved for compassionate release. He cited his severe health problems as well as the COVID-19 pandemic. Wright's medical issues include obesity, cataracts, diabetes, end-stage renal disease, and peripheral vascular disease, which has led to several amputations. Collectively, the illnesses are terminal. The district court considered Wright's medical condition but ultimately found that the section 3553(a) sentencing factors did not warrant release. Wright appealed.

II.

We review a district court's denial of compassionate release for an abuse of discretion. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). District courts consider three requirements when deciding compassionate release motions: (1) extraordinary and compelling reasons for release; (2) the section 3553(a) sentencing factors; and (3) any applicable policy statements. 18 U.S.C. § 3582(c)(1)(A); *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir.

2021).  A court may deny compassionate release based on "any of [these] prerequisites." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

Here, the government conceded extraordinary and compelling circumstances based on Wright's health problems.  But it argued that the section 3553(a) sentencing factors did not favor release.  The district court agreed that despite Wright's poor health, the section 3553(a) factors did not justify release.  So that is the focus of our inquiry on appeal.

A.

In a thoughtful and thorough opinion, the district court addressed three sentencing factors when denying Wright's request for early release.  First, it considered the nature and circumstances of Wright's offenses and his personal history.  18 U.S.C. § 3553(a)(1).  Wright was involved in a criminal biker gang; "murdered, stole airplanes, and did business with the Medellín Cartel"; had multiple disciplinary violations in prison; and never accepted responsibility for his crimes (until counsel's involvement in the present release effort). R. 312, Pg. ID 792–93.

Second, the district court weighed the need for Wright's sentence to reflect the seriousness of his offenses, provide just punishment, afford adequate deterrence, and protect the public.  18 U.S.C. § 3553(a)(2).  The only way to accomplish these goals was to keep Wright in prison.  After all, Wright committed one of the most serious crimes in our criminal justice system:  Murder.

Third, the district court asked whether keeping Wright in prison would lead to unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(6).  It would not.  The court noted that the average federal sentence for murder is just over 255 months.  Wright had served about that long, but he committed other crimes on top of murder (such as drug trafficking).  So his continued incarceration did not suggest an unwarranted disparity.  And even if Wright's sentence was longer than his co-defendants', any disparity was warranted.  Both co-defendants "cooperated, and neither was the trigger man." R. 312, Pg. ID 799.  Based on this analysis, the district court found that the sentencing factors did not warrant early release.  Thus, it denied Wright's motion.

B.

The district court did not abuse its discretion in reaching this conclusion. Wright committed a cold-blooded killing, distributed large quantities of cocaine, and did business with one of the world's most notorious cartels. His crimes were heinous, and they justifiably resulted in two life sentences. The district court did not abuse its discretion by requiring Wright to serve those sentences.

District courts have "substantial discretion" when balancing the section 3553(a) sentencing factors. *Ruffin*, 978 F.3d at 1005. And a district court acts within its discretion when it denies compassionate release based on the seriousness of the underlying offense. *See* 18 U.S.C. § 3553(a)(2). For example, we have previously affirmed a district court's denial of compassionate release by form order. *See Navarro*, 986 F.3d at 672. We did so in large part because "the offense conduct was very serious"—it involved possessing ten kilograms of cocaine. *Id.* (quotation marks omitted). The serious nature of the offense made it obvious that the district court did not abuse its discretion when balancing the sentencing factors. *Id.* And in another case, we affirmed the denial of compassionate release based largely on "the seriousness of [the defendant's] child-pornography offenses." *United States v. McCoy*, No. 20-1871, 2021 WL 867137, at *2 (6th Cir. Mar. 2, 2021).

As these cases show, district courts have wide latitude to deny compassionate release based on the seriousness of the underlying offense. So long as the district court "considers the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority," it is not an abuse of discretion to deny compassionate release based on the seriousness of the offense. *Ruffin*, 978 F.3d at 1008 (cleaned up). District courts "may place great weight" on one sentencing factor when that weight is warranted. *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013). And such weight is warranted when a prisoner (like Wright) has committed a serious crime (like murder). Thus, the district court did not abuse its discretion by denying release.

C.

Wright raises three counterarguments.  None is persuasive.  Wright first contends that the district court abused its discretion when evaluating the nature and circumstances of the offense as well as his personal history.  *See* 18 U.S.C. § 3553(a)(1).  He says the trial court "abused its discretion by implying that because Mr. Wright did not take responsibility for the killing until years after the fact that it somehow diminishes the importance of" his recent expressions of remorse.  Appellant Br. 16–17.  But a district court does not err, let alone abuse its discretion, in concluding that late-breaking expressions of remorse are more likely opportunistic than genuine.  In any event, the district court acknowledged Wright's recent remorse, health problems, and rehabilitative efforts, but found that other considerations—such as his criminal history and disciplinary violations—outweighed these factors.  This was a perfectly reasonable conclusion given the circumstances.  Definitely not an abuse of discretion.

Second, Wright faults the district court for relying on another case from the Eastern District of Michigan in which the court declined to grant compassionate release to a 68-year-old convicted murderer.  *See United States v Araña*, No. 2:95-cr-80272-13, 2020 WL 2214232 (E.D. Mich. May 7, 2020).  Wright says the case is distinguishable because he is terminally ill, while Araña was not.  But the district court simply identified factual similarities between this case and *Araña*.  It did not say the case was binding or that it was identical.  Because the district court did not "base its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence," it did not abuse its discretion.  *Highmark Inc. v. Allcare Health Mgt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014) (cleaned up).

Finally, Wright argues that he ought to be released because his co-defendants are no longer in prison.  He says that his continued incarceration constitutes an unwarranted sentencing disparity.  *See* 18 U.S.C. § 3553(a)(6).  But section 3553(a)(6) speaks of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  So the question "is not necessarily whether a particular defendant received a sentence that was different from the sentences of his co-defendants."  *United States v. Thomas*, 395 F. App'x 168, 175 (6th Cir. 2010).  Instead, it "concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct."

*United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008) (citations omitted). Wright has identified no such national disparity. And even if co-defendant sentences were probative, Wright's co-defendants are not similarly situated: Both cooperated, and neither pulled the trigger.

* * *

In the end, Wright disagrees with the district court's balancing of the sentencing factors. But the district court did not abuse its discretion in concluding that the severity of Wright's criminal conduct warrants continued incarceration. Thus, we affirm.