NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0387n.06
No. 20-5951

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 17, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| JENNY ELIZABETH BAILEY, | ) DISTRICT OF TENNESSEE |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

BEFORE: WHITE, LARSEN, and NALBANDIAN, Circuit Judges.

HELENE N. WHITE, Circuit Judge.

Defendant Jenny Bailey appeals the denial of her motion seeking compassionate release in light of the COVID-19 pandemic. The district court denied Bailey's motion based on the sentencing factors under 18 U.S.C. § 3553(a). Bailey argues that the court erred by considering the amount of time she had served and whether her release would create disparities with other defendants who had similar criminal records and had committed similar crimes. We AFFIRM.

**I.**

On July 10, 2018, Bailey was indicted (along with 26 others) for being part of a large conspiracy to purchase methamphetamine in California and distribute it in the Eastern District of Tennessee. In June 2019, she pleaded guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).

Bailey participated in the conspiracy from February 2017 to July 2018. During that time, she and her boyfriend bought ounce quantities of methamphetamine from two co-defendant

suppliers. Bailey admitted to buying a single ounce at least four times, and the most she sold in a single transaction was about two ounces. In her plea agreement, Bailey admitted that she "conspired to distribute and is accountable for at least 500 grams but no more than 1.5 kilograms of actual methamphetamine." R. 502 PID 2140. Bailey has been in custody since her arrest on July 13, 2018.

Bailey's offense carried a statutory minimum sentence of ten years' imprisonment. 21 U.S.C. § 841(b)(1)(A). The probation department calculated her sentencing guideline range to be 121 to 151 months.[1] The government requested a four-level downward departure to a sentencing range of 78 to 97 months.[2] In a September 9, 2019 sentencing proceeding, the court sentenced Bailey to 78 months' imprisonment, including time served since July 13, 2018.

Bailey is serving her sentence at FPC Alderson, a federal facility located in West Virginia. On May 8, 2020, she filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). She argued that her medical conditions—obesity, hypothyroidism, recent appendix surgery, anemia, and recent influenza that left fluid on one of her lungs—placed her at an increased risk of complications or death from COVID-19. She pointed out that she had served 28% of her sentence, had no incidents in prison, and had become a member of the choir and a bible-study leader. At the time, her facility had no reported COVID cases.

The government opposed Bailey's motion, arguing that she failed to present extraordinary circumstances because although she was obese—with a body-mass index (BMI) of 33.7—the then-

---

[1] Bailey had a "criminal history category" of II. Bailey's total offense level was 31. The initial offense level for her admitted possession of between 500 grams and 1.5 kilograms of methamphetamine was 34. The probation department recommended applying a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and a one-point reduction under U.S.S.G. § 3E1.1(b) for Bailey's assistance to authorities by timely notifying them of her intent to enter a guilty plea. Those reductions brought her offense level to 31. An offense level of 31 and a criminal history category of II yields a sentencing range of 121 to 151 months. U.S.S.G. Ch. 5 Pt. A.

[2] Though Bailey's sentence carried a ten-year mandatory minimum, all parties agreed that she qualified for 18 U.S.C. § 3553(f)'s safety-valve provision, as amended by the First Step Act in 2018, and that this provision allowed the court to sentence her below the ten-year statutory minimum.

current CDC guidelines only recognized obesity as a risk factor for those with a BMI of over 40. The court denied the motion on that basis before Bailey had a chance to file a reply brief. Bailey subsequently filed a reply brief and moved for reconsideration because the court decided her motion before she could reply. Bailey's reply brief raised other medical conditions, including that she suffered from "PVCs" (irregular heartbeats) and might have cancer. The court directed the Federal Defender's office to file a supplemental brief on Bailey's behalf, and it did so. The government filed a renewed opposition brief—but because the CDC had since updated its guidelines to reflect that people with a BMI of 30 or higher were at increased risk of COVID complications, the renewed brief conceded that extraordinary and compelling circumstances were present. However, the government argued that the sentencing factors under 18 U.S.C. § 3553(a) militated against granting Bailey's motion.

The district court agreed, and on August 5, 2020, it granted Bailey's motion for reconsideration but denied her request for compassionate release. This time, the court did not discuss whether Bailey's circumstances were "extraordinary and compelling"—other than acknowledging that the parties agreed that they were—and instead held that the § 3553(a) factors counseled against granting Bailey's motion. It reasoned that (1) Bailey's crime was "very serious"; (2) she had served only 24 months of a 78-month sentence that was already below the guidelines range; and (3) granting her release would create unwarranted disparities. R. 1006 PID 12003. Bailey appealed.

## II.

The compassionate-release statute allows a district court to reduce an inmate's sentence if it (1) finds that "extraordinary and compelling reasons warrant such a reduction"; (2) finds that a

reduction is "consistent with applicable policy statements issued by the Sentencing Commission"[3]; and (3) "consider[s] the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i). The court may deny compassionate release if any of § 3582(c)(1)(A)(i)'s requirements are lacking without addressing the others. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021). We review the denial of a compassionate-release motion for abuse of discretion. *United States v. Jones*, 980 F.3d 1108, 1112 (6th Cir. 2020).

**A.**

Bailey first contends that the district court erred by considering the fact that she had served only 24 months of her 78-month sentence. Because "the timing of the pandemic as it relates to the amount of time [Bailey] has served is a function of chance," she argues, giving weight to this "accident of timing" is arbitrary and unmoored from the § 3553(a) factors. Bailey Br. at 21. But in two precedential opinions issued after the close of briefing in this case, we held that it is permissible to consider the length of time thus far served under several of the § 3553(a) factors. *See Jones*, 980 F.3d at 1115; *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020). These decisions foreclose Bailey's first argument.[4]

During oral argument, Bailey's counsel acknowledged that these decisions show that it is permissible to consider how much time a petitioning inmate has served, but counsel represented that the district courts in the Eastern District of Tennessee—including the district court in this case—have adopted a de facto "presumption" against granting compassionate release whenever an inmate has served less than 50% of her sentence. Oral Arg. at 3:05-3:35, 5:00-6:13; *see also*

---

[3] Because there is no currently "applicable" policy statement for prisoner-filed motions, courts considering prisoner-filed motions may skip the second step of the inquiry until an applicable policy statement is issued. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1108, 1111 (6th Cir. 2020).

[4] Bailey also argues that the district court violated due process by considering time served because doing so is unrelated to any § 3553(a) factors and is therefore arbitrary. But this argument fails for the same reason: *Jones* and *Ruffin* hold that time served is relevant to several § 3553(a) factors.

Bailey Br. at 26-27 (arguing that the court applied a "time-served rule" turning on the fact that Bailey "served less than 50 percent of [her] sentence").

Such an approach would be problematic.[5] A critical touchstone of sentencing or sentence-modification is that each defendant must receive individualized consideration under the § 3553(a) factors. *See Gall v. United States*, 552 U.S. 38, 52 (2007) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (citation omitted)). The need for individualized consideration remains important when deciding whether to grant a remedy that, by definition, applies only when unique circumstances exist. Congress has directed courts to consider *all* applicable § 3553(a) factors, *Jones*, 980 F.3d at 1114, to "provide assurance that [they are] making an individualized determination," *United States v. Easter*, 975 F.3d 318, 327 (3d Cir. 2020) (discussing import of 18 U.S.C. § 3582(c)'s several identically worded references to § 3553(a) factors). A district court would contravene that requirement if it used a time-served presumption without otherwise considering all relevant § 3553(a) factors.[6]

In this case, however, the record does not support Bailey's argument that the district court applied an impermissible presumption. Though the court mentioned that Bailey "only served

---

[5] Counsel for the government acknowledged that this sort of approach would be problematic if it meant that the district court did not consider other relevant § 3553(a) factors. Oral Arg. at 17:10-18:38; *see also id.* at 16:21-16:42 ("Yes, your honor, that would be a problem, because the statute commands the court to consider the applicable § 3553(a) factors. And if the court was operating under a presumption, a per se rule, then that would be a problem if the court wasn't considering the § 3553(a) factors.").

[6] While the amount of time a defendant has served is relevant to some § 3553(a) factors, it is not relevant to others. We have recognized that the amount of time served can be relevant to assessing the need for a sentence to reflect the seriousness of an offense and provide just punishment for that offense, 18 U.S.C. § 3553(a)(2)(A); the need to "afford adequate deterrence," *id.* § 3553(a)(2)(B); and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6). *Jones*, 980 F.3d at 1115; *Ruffin*, 978 F.3d at 1008. But time served is not relevant to other § 3553(a) factors, such as the need to consider the "characteristics of the defendant," 18 U.S.C. § 3553(a)(1).

24 months of her 78-month sentence," R. 1006 PID 12003, it did so as one of several considerations relevant to the § 3553(a) factors. It never indicated that it "use[d] the percentage of time served to make any hard-and-fast rule[] about when early release is appropriate." *United States v. Kincaid*, 805 F. App'x 394, 395 (6th Cir. 2020) (order). Accordingly, Bailey's unsupported argument that the district court applied an improper "time-served presumption" does not persuade us that reversal is warranted.

**B.**

Bailey next argues that the court erred by using the wrong "comparator" when considering whether granting release would create unwarranted disparities. Section 3553(a)(6) instructs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and we have recognized that § 3553(a)(6) is among the "applicable" factors a court may consider in a § 3582(c)(1)(A) analysis, *Jones*, 980 F.3d at 1115; *cf. United States v. Wright*, 991 F.3d 717, 720 (6th Cir. 2021).

The district court reasoned that Bailey's release would create disparities among her co-defendants and among other defendants who committed similar crimes with similar records. Bailey argues that the court chose the wrong "comparator." Instead of considering defendants with similar records and crimes, she argues, § 3553(a)(6) required the court to compare Bailey to defendants with similar "extraordinary and compelling" circumstances, even if they "were not convicted of similar crimes with similar records." Reply Br. at 11.

The government responds that Bailey's position is inconsistent with § 3553(a)(6)'s text, and we agree. Section 3553(a)(6) describes the relevant comparators as "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Bailey argues

that it should "not make a difference for disparity purposes that many, most, or even all in [her] comparator groups were not convicted of similar crimes with similar records." Reply Br. at 11. But that is precisely what matters under the text of § 3553(a)(6). *See United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) ("Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct.").[7] The district court did not abuse its discretion in its § 3553(a)(6) discussion.

## III.

For the reasons above, we affirm the district court's denial of Bailey's compassionate-release motion.

---

[7] Bailey's proposed comparator rule would also create significant difficulties in application. In the COVID context alone, there are a plethora of variables that might affect whether extraordinary and compelling circumstances exist, including age, number/type/severity of existing comorbidities, the extent to which COVID has infiltrated a given facility, etc. Determining whether those factors—and any others that may be relevant—constitute "extraordinary and compelling circumstances" is necessarily context- and case-specific. Defining what counts as sufficiently "similar" to warrant (or, under Bailey's rule, require) comparison is no easy task. But Bailey's rule would mean district courts commit legal error unless they make those comparisons, with no clear guidance on how exactly to do so. To be sure, courts certainly have discretion to consider how other compassionate-release motions have been decided, and that discretion surely encompasses the ability to make the sort of comparison Bailey argues for here. *See United States v. Tucker*, 404 U.S. 443, 446 (1972) (sentencing courts are "largely unlimited either as to the kind of information [they] may consider, or the source from which it may come"); *accord Pepper v. United States*, 562 U.S. 476, 488 (2011). But a rule requiring them to find and compare defendants with similar "compelling" circumstances for disparity purposes lacks a basis in § 3553(a)(6)'s text and may prove unworkable in practice.

WHITE, Circuit Judge, concurring.  I write separately to make two observations.  First, there is a legitimate argument that the disparity factor under § 3553(a)(6) may have reduced relevance in compassionate-release cases where extraordinary and compelling circumstances otherwise justify release.  Second, in cases where extraordinary and compelling circumstances exist, district courts would be well-advised to weigh their § 3553(a) analysis against the weight of those circumstances.

## I.

Although we have recognized—without much discussion—that § 3553(a)(6) is a relevant factor to consider in compassionate-release cases, *United States v. Jones*, 980 F.3d 1098, 1115 (6th Cir. 2020); *cf. United States v. Wright*, 991 F.3d 717, 720 (6th Cir. 2021), there are good reasons to be wary of placing too much weight on this factor.

Perhaps recognizing that "[s]entencing and sentence-modification decisions are distinct creatures," *Jones*, 980 F.3d at 1112 n.23, when Congress enacted the compassionate-release statute, it only required district courts to consider the § 3553(a) factors "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  That qualifying phrase makes sense, because not all front-end sentencing considerations map on perfectly to back-end decisions about granting early release.  *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 406 (E.D. Pa. 2020) ("Because section 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here.").

In some ways, the disparity factor is a strange fit.  The purpose of § 3553(a)(6) is to promote uniformity among sentences.  *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007).  But the point of the compassionate-release statute is to recognize that unique circumstances— unforeseeable at the time of sentencing—may justify a departure from the norm of uniformity.  *See*

S. Rep. No. 98-225, at 121 (1983) (describing § 3582(c)(1)(A) as a "safety valve" that "applies, regardless of the length of sentence, to the unusual case in which the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner.").

Congress provided that the remedy in those situations is early release, and early release often—perhaps most of the time—creates disparities.[1] It is irrational to say that a disparity-creating remedy should be unavailable *because* it creates disparities. That is akin to telling a prisoner: (1) "extraordinary and compelling circumstances justify releasing you earlier than similarly situated defendants"; but (2) "because you will be released earlier than similarly situated defendants, early release is not justified." In other words, relying too heavily on the disparity factor could turn compassionate release into a meaningless remedy.

That Congress did not intend to create this type of Catch-22 is reflected in the words it chose to use in §§ 3553(a)(6) and 3582(c)(1)(A)(i). Section 3553(a)(6) does not forbid *all* sentence disparities—only "unwarranted" ones. *See United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("[A] sentencing *difference* is not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation."); *United States v. Hernandez-Fierros*, 453 F.3d 309, 313-14 (6th Cir. 2006) (recognizing that sentence disparities "specifically authorized by statute" are not "unwarranted" under § 3553(a)(6)).[2] And in § 3582(c)(1)(A)(i), Congress specifically provided that courts may reduce a sentence if they find that "extraordinary and compelling reasons *warrant* such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

---

[1] There may be circumstances where compassionate release does not create disparities—e.g., when a defendant has already served an above-Guidelines sentence. But in most cases, early release will—by definition—create sentencing disparities.

[2] *See also United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008) ("Phinazee and the dissent fail to recognize that *unwarranted* disparities in sentencing is what should be avoided, *not* those that are warranted.").

Arguably, then, when extraordinary and compelling circumstances exist, the disparities caused by a sentence reduction are authorized by Congress and are not in and of themselves "the kinds of 'unwarranted' sentencing disparities Congress sought to eliminate under § 3553(a)(6)." *Pepper v. United States*, 562 U.S. 476, 503 (2011); *see also United States v. Tidwell*, 476 F. Supp. 3d 66, 79 (E.D. Pa. 2020) ("[Section] '3553(a)(6) disallows *unwarranted* sentence disparities, not all sentence differences.' Congress originally passed § 3582(c)(1)(A)(i) as a 'safety valve' to reduce a sentence in 'the unusual case in which the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner.'. . . [W]hen a defendant demonstrates that 'extraordinary and compelling reasons' warrant a sentence reduction, the ensuing sentence disparity 'has been authorized by Congress, and is therefore a warranted disparity.'" (citations omitted) (some internal quotation marks omitted)).

These considerations suggest that district courts should avoid relying too heavily on the disparity factor when deciding compassionate-release motions. It makes little sense to conclude that an inherently disparity-creating remedy should be denied because it creates disparities. Congress's decision to use the word "warrant" in both §§ 3582(c)(1)(A)(i) and 3553(a)(6) strongly suggests that it sought to avoid that kind of approach.

## II.

Relatedly, in my view, in cases where district courts invoke § 3553(a) to deny a compassionate-release motion, they should avoid doing so in a vacuum without reference to the extraordinary and compelling circumstances that brought the motion to court in the first place. The premise of § 3582(c)(1)(A)(i) is that the arrival of unforeseen compelling circumstances might make the original sentence no longer appropriate, even if it was properly fashioned under the relevant § 3553(a) factors at the original sentencing. Simply rehashing the same § 3553(a) analysis

employed during sentencing may fail to account for this crucial point. I recognize that our precedents state that courts may deny compassionate-release motions solely on § 3553(a) grounds. However, in cases where extraordinary circumstances *do* exist, a court's § 3553(a) analysis will likely appear incomplete if it analyzes the § 3553(a) factors without reference to the extraordinary and compelling circumstances presented.

This point has particular gravity in the COVID-19 context, where a previously unforeseeable disease has killed over 2,500 incarcerated persons—a punishment for their crimes that no sentencing judge intended at the time the original sentences were imposed.[83] Applying the § 3553(a) factors without weighing them against the extraordinary and compelling circumstances underlying the motion is inconsistent with the compassionate-release statute, which contemplates a balancing of the § 3553(a) factors and the circumstances that may warrant release.

---

[3] The Marshall Project and Associated Press—which together collect data weekly from state and federal prison agencies—have compiled inmate-death numbers reported from every state and the federal Bureau of Prisons. Based on the data compiled by these entities, 2,715 incarcerated persons have died from COVID-19 as of June 25, 2021. *See A State-by-State Look at Coronavirus in Prisons*, THE MARSHALL PROJECT, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons (last updated July 1, 2021).