NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0421n.06

Case No. 23-5144

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 02, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| BRIAN RANDALL, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: McKEAGUE, READLER, and DAVIS, Circuit Judges.

**McKEAGUE, Circuit Judge.** Brian Randall is serving a federal sentence while suffering from several serious health conditions. He filed a motion for compassionate release during the COVID-19 pandemic, which the district court denied. Randall then filed a second motion for compassionate release after his health further deteriorated. The district court again denied the motion. Now, Randall appeals that second denial of relief. He argues that the court abused its discretion by overlooking court filings and failing to demonstrate that it considered his arguments. We disagree. Having examined the record as a whole, we conclude that the district court adequately addressed Randall's evidence and arguments. We therefore **AFFIRM** its order.

**I**

In 2016, Brian Randall pleaded guilty to several charges arising from a conspiracy to distribute and possess methamphetamine. Randall led local distribution activities and admitted responsibility for distributing at least four and a half kilograms of the controlled substance. Those charges, combined with Randall's criminal history, yielded an advisory sentencing guidelines

range of 420 months to life in prison. However, his plea agreement with the government specified a below-guidelines term of 288 months' imprisonment followed by five years of supervised release.

At the time of his guilty plea, Randall suffered from several serious medical conditions: type 2 diabetes, hypertension, chronic obstructive pulmonary disease, and severe obesity. Randall argued at sentencing that, given his poor health and other mitigating factors, the agreed-upon 288-month sentence was sufficient punishment for his offense. After a sentencing hearing, the district court accepted the plea agreement and imposed the parties' requested 288-month (or 24-year) sentence.

Randall moved for compassionate release in 2020, approximately four and a half years into his sentence. He argued primarily that his chronic medical conditions exposed him to severe risk of complications from COVID-19. The district court found, as a threshold matter, that Randall's serious health conditions—combined with the limited opportunities for social distancing in prison—arguably qualified as "extraordinary and compelling reasons" that could warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). But after balancing the relevant § 3553(a) factors, the court ultimately concluded that a sentence reduction was inappropriate. It acknowledged the pandemic's potential effect on Randall's health. It also commended Randall's prison record, recounted positive feedback from prison supervisors, and considered the relative drop in recidivism associated with reaching Randall's age of 55. Those considerations, however, failed to outweigh the seriousness of Randall's offense, his criminal history, and the fact that he had served only a fraction of his already below-guidelines sentence. Randall did not appeal the court's decision.

Randall filed a second motion for compassionate release in August 2022. The filing described how Randall's physical condition had deteriorated since his previous motion. Among other things, Randall had developed significant infections in his foot and urinary tract, severe

sepsis, stage 4 chronic kidney disease, and an increased body-mass index of 50. Noting that his foot infection had continued for weeks, Randall argued that the Bureau of Prisons (BOP) was providing inadequate treatment. That inadequate treatment, he continued, warranted early release—especially when considered alongside his collection of physical conditions and the ongoing pandemic. Randall supported his motion with detailed medical records, and both parties periodically updated the district court with Randall's evolving medical information.

In late September 2022, while his second motion was pending, Randall contracted COVID-19 and was rushed to an outside hospital. Medical staff kept him on a ventilator in the intensive care unit for four days. Randall returned to prison about three weeks later and promptly informed the court of his recent hospitalization. In that October filing, Randall also stated that he believed he was designated for transfer to a BOP medical facility but did not know when the transfer would occur. The government filed a response acknowledging Randall's COVID-19 hospitalization and confirming that he had not yet been transferred to a medical facility. The government's response also argued that Randall was not taking his own health seriously, as evidenced by his eating habits in prison.

Prison officials transferred Randall to a BOP medical facility on October 19, and the government immediately notified the court of the transfer. Even so, Randall required another outside hospitalization in December after experiencing low oxygen levels. He returned to the prison medical facility upon stabilizing.

Randall then hired an expert, Dr. Paul Bryant, to review his medical records and assess his condition. Dr. Bryant's sworn declaration—which Randall filed with the district court in January 2023—described Randall's heightened risk of further physical deterioration due to chronic illnesses, his susceptibility to dangerous infections exacerbated by diabetes, and his vulnerability to COVID-19. Randall added that his two most recent hospitalizations, including one that occurred after his transfer to a BOP medical facility, reinforced the need for relief.

On February 8, 2023, the district court denied Randall's second motion for compassionate release. The order acknowledged Randall's claims regarding his deteriorating physical condition, including his foot and urinary tract infections, sepsis, kidney disease, and elevated body-mass index. But even after crediting Randall's characterization of his deteriorating health, the court concluded that early release was inappropriate "because the time he has served to date does not come close to reflecting the seriousness of his offense, promote respect for the law, serve as a deterrent to him or others, or provide just punishment" under the § 3553(a) sentencing factors. Order, R.630 at PageID 7339. The court referenced the analysis from its first denial of compassionate release and explained that the "same conclusion applies a mere year and a half later" when over two thirds of Randall's sentence remained unserved. *Id.*

Then, "having read the filings and medical records," *id.*, the court went on to address two specific additional points. First, it credited the government's argument that Randall's prison eating habits undercut the claim that his medical conditions limited his ability to provide self-care in prison. Second, the order briefly addressed Randall's earlier concern—raised in an October 2022 filing—that the government had not yet transferred him to a BOP medical facility. The court noted that this was no longer the case given Randall's current confinement in a medical facility. The order cited the "inmate locator" feature on the BOP's website; it did not specifically reference the court filings documenting Randall's transfer. *See id.* at PageID 7340. Nor did it discuss Dr. Bryant's assessment or any specific medical records.

Now, Randall appeals that order.

## II

We review a district court's denial of compassionate release under 18 U.S.C. § 3582(c)(1)(A) for an abuse of discretion. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). A court abuses its discretion by "bas[ing] its ruling on an erroneous view of the law or on

a clearly erroneous assessment of the evidence." *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

Courts may reduce a defendant's previously imposed sentence if certain statutory criteria are satisfied. 18 U.S.C. § 3582(c)(1)(A). Before granting compassionate release to a defendant who is under the age of 70, the district court must determine that "extraordinary and compelling reasons warrant such a reduction." *Id.* The court must also ensure that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* If those two conditions are satisfied, the court may grant the motion only after considering the applicable sentencing factors listed in 18 U.S.C. § 3553(a). *See id.* However, a court may *deny* compassionate release upon finding that any of those three statutory requirements are lacking; it need not address the others. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Indeed, district courts enjoy "substantial discretion" in considering motions for compassionate release. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) (quoting *Ruffin*, 978 F.3d at 1005).

Here, the district court declined to address whether Randall's second motion established "extraordinary and compelling reasons" warranting compassionate release. And the Sentencing Commission has not yet adopted any policy statement that applies where defendants like Randall file their own compassionate-release motions.[1] *See United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc); *see also Jones*, 980 F.3d at 1108–11. Therefore, Randall's appeal hinges on whether the district court abused its discretion when it balanced the § 3553(a) sentencing factors to conclude that compassionate release was inappropriate.

District courts need not engage in lengthy discussions of the § 3553(a) factors when conducting that balancing analysis. Rather, the ultimate question is whether the record—taken as

---

[1] This could soon change. The Sentencing Commission recently promulgated a proposed amendment to U.S.S.G. § 1B1.13—the policy statement that elaborates on the criteria for compassionate release. *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28254, 28254–59 (May 3, 2023). If that amendment takes effect, it will extend the policy statement's applicability to include defendant-filed motions. *Id.* at 28256.

a whole—satisfies the appellate court that the district judge "considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1966 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). We thus do not require district courts to "pen a 'full opinion' in every sentencing or sentencing-modification decision." *Jones*, 980 F.3d at 1113 (quoting *Chavez-Meza*, 138 S. Ct. at 1964). Nor do we require the district court to " 'specifically articulat[e]' its analysis of every single § 3553(a) factor" when "the record *as a whole* demonstrates that the pertinent factors were taken into account." *Id.* at 1114 (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)).

Case-specific circumstances guide the level of detail we expect from district judges ruling on motions for compassionate release. *Chavez-Meza*, 138 S. Ct. at 1965. Naturally, detailed orders are less likely to be necessary when the same district judge previously handled the defendant's original sentencing and earlier compassionate-release proceedings. *Jones*, 980 F.3d at 1113–14. After all, "context and the record" from those prior proceedings often demonstrate that the court considered the proper factors. *See id.* at 1113 (quoting *Chavez-Meza*, 138 S. Ct. at 1966). We also require less detailed analysis when the compassionate-release motion "reflects a 'conceptually simple' matter." *United States v. Navarro*, 986 F.3d 668, 671–72 (6th Cir. 2021) (quoting *Chavez-Meza*, 138 S. Ct. at 1964). In such cases, a district court may even deny a compassionate-release motion with a "barebones" form order. *Id.*

### III

### A

Turning to the case at hand, the district court acted within its discretion when it denied Randall's compassionate-release motion based on the § 3553(a) factors. The district court did not dispose of Randall's motion with a barebones form order. Rather, it issued a reasoned opinion that explicitly addressed several relevant sentencing factors: the seriousness of Randall's methamphetamine-distribution offense, the need to deter crime and promote respect for the law,

Randall's below-guidelines sentence, and the substantial time remaining on that sentence. The order also discussed Randall's deteriorating medical condition. But it concluded that the other factors ultimately weighed against early release, "[e]ven if [Randall's] health condition has deteriorated to the extent he claims." Order, R.630 at PageID 7339. That analysis exceeds the bare minimum that we deemed acceptable in prior cases. *See Navarro*, 986 F.3d at 671–72.

The record as a whole further supports the district court's decision. The same court imposed Randall's original sentence after it factored in his poor health and other relevant considerations. *See Jones*, 980 F.3d at 1114. And that court also ruled on Randall's earlier motion for compassionate release. There, it explicitly considered the pandemic's potential impact on Randall's health, Randall's age-based recidivism arguments, his good behavior in prison, his criminal history, the severity of his crime, and the time remaining on his sentence. The record thus demonstrates that the district court was deeply familiar with Randall's sentencing arguments—including those related to his poor health and the COVID-19 pandemic—and considered them in earlier stages of the case. The court further accounted for Randall's deteriorating health in its second order denying relief. We see no abuse of discretion.

**B**

Randall's arguments on appeal do not persuade us otherwise. He argues that the district court abused its discretion in two different ways. First, he claims that the district court overlooked some of his filed evidence and arguments, including Dr. Bryant's expert medical assessment. Second, Randall argues that the court erred by focusing its § 3553(a) analysis on the severity of his crime and the amount of time served.

**1**

Randall alleges that the district court failed to read or consider some of his filed documents. It is, of course, an abuse of discretion for a court to completely overlook pertinent evidence or arguments. *See, e.g.*, *Jones*, 980 F.3d at 1112 (stressing that " 'discretion' does not mean 'whim' "

(quoting *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020))). Randall highlights three observations about the district court's order that, in his view, make it "completely clear" that the court overlooked some of his filings. Appellant's Br. 26. First, the order did not mention Dr. Bryant's expert medical assessment, even though it dedicated nearly a full page to Randall's prison eating habits. Second, the order employed qualifying language ("claims," "asserts," and "notes") to describe Randall's health problems, despite filed medical records documenting the diagnoses. Finally, the order addressed one of Randall's past complaints by noting that Randall no longer awaited transfer to a BOP medical facility—citing the BOP's online "inmate locator" feature— even though both parties had already updated the court regarding Randall's transfer.

We are unconvinced that the district court overlooked or ignored Randall's filings. Rather, Randall seems to overestimate the extent to which district courts must spell out their reasoning in sentence-modification orders.[2] Although the court certainly must provide reasons for its decisions, *Jones*, 980 F.3d at 1112–13, it "does not abuse its discretion simply because it does not expressly address each of [the defendant's] arguments." *United States v. Sandlain*, No. 22-2049, 2023 WL 3244974, at *2 (6th Cir. May 4, 2023); *see also Chavez-Meza*, 138 S. Ct. at 1967–68 (affirming a sentence modification that declined to address each of the defendant's arguments). As long as the record as a whole demonstrates that the district court properly considered the parties' arguments and the sentencing factors, we give substantial deference to the court's decision. To that end, a

---

[2] Randall relies primarily on two out-of-circuit decisions to support his argument. *See United States v. Newton*, 996 F.3d 485 (7th Cir. 2021); *United States v. Mangarella*, 57 F.4th 197 (4th Cir. 2023). Neither case binds us, but both are nonetheless distinguishable. *Newton* and *Mangarella* each vacated a district court order that denied compassionate release without acknowledging the defendant's individualized medical evidence of susceptibility to COVID-19. In *Newton*, the district court made its own "unsupported medical judgment" and concluded that the defendant's medical concerns did not qualify as "extraordinary and compelling reasons" warranting relief. 996 F.3d at 489–91. That is a far cry from this case, where the district court credited Randall's characterization of his medical condition before concluding that other sentencing factors deserved more weight. And in *Mangarella*, the district court made statements during a colloquy suggesting that it erroneously believed that the defendant's medical arguments could not be considered under the § 3553(a) factors. 57 F.4th at 204. Nothing suggests that the district court here was under a similar misimpression.

certification that the judge has considered the defendant's motion and has taken into account the § 3553(a) factors carries significant weight. *See Chavez-Meza*, 138 S. Ct. at 1965, 1967.

With that in mind, the district court did not need to explicitly discuss Dr. Bryant's expert medical assessment—or any specific medical records—in its order. Importantly, the court certified that it had "read the filings and medical records." Order, R.630 at PageID 7339; *see Chavez-Meza*, 138 S. Ct. at 1965, 1967. The order also directly acknowledged Randall's deteriorating medical condition and assumed that the deterioration was as severe as Randall claimed. Indeed, the court had previously recognized that Randall's health circumstances during the pandemic could be "extraordinary and compelling reasons" warranting compassionate release. It was therefore unnecessary to specifically address Dr. Bryant's assessment as well. *See Sandlain*, 2023 WL 3244974, at *2. That remains true even though the court chose instead to address the government's argument regarding Randall's prison eating habits. District courts have "substantial discretion" to weigh considerations and arguments as they see fit. *Ruffin*, 978 F.3d at 1005. The court here used that discretion to note Randall's eating habits, but that in no way indicates that other arguments were overlooked.

Randall's other two observations about the order are similarly unpersuasive. The district court's decision to reference Randall's health problems as "claims" and "assertions" has no bearing on the weight it gave those health problems in its analysis. As Randall concedes, the district judge proceeded under the assumption that Randall's health condition had deteriorated as Randall reported. The court's vocabulary choices therefore do not suggest that it had relied on any belief that might have altered its analysis. Nor do they suggest any unfamiliarity with Dr. Bryant's assessment or other medical records. Relatedly, the fact that the district court chose to cite the BOP inmate locator to establish that Randall had been transferred to a medical facility does not mean that it had not also obtained that information from the court filings. It certainly does not convince us that the court failed to consider Randall's evidence or arguments.

**2**

Randall next argues that remand is necessary because the district court's order focused solely on the severity of his crime and the amount of time he had served, without properly considering other relevant § 3553(a) factors. He further argues that the court abused its discretion by failing to demonstrate that it had considered countervailing factors like Randall's declining health and good behavior in prison.

In support, Randall relies on our unreported decision in *United States v. Estrada-Elias*, No. 21-5680, 2021 WL 5505499 (6th Cir. Nov. 24, 2021). In that case, a divided panel of this Court reversed the district court's denial of compassionate release to a terminally ill 90-year-old man. The district court had focused almost exclusively on the severity of the defendant's marijuana-distribution crime and "all but ignored" the defendant's significant evidence of rehabilitation and other countervailing sentencing factors. *Id.* at *3. The district court also "mischaracterize[d]" the defendant's criminal history and made findings that were "incongruous" with the record. *Id.* at *2–3. In sum, the majority concluded, the district court had abused its discretion. *Id.* at *4.

However, *Estrada-Elias* does not control this case. As a preliminary matter, it is factually distinguishable. The district court here carefully considered Randall's various sentencing arguments on multiple occasions, including the original sentencing and first denial of compassionate relief. The court expressly discussed Randall's medical conditions, age-based recidivism argument, and good behavior in prison. These factors simply were not enough, in the district court's view, to outweigh the seriousness of Randall's offense and the length of his unserved sentence.

Moreover, the district court's analysis is reinforced by *United States v. Wright*, 991 F.3d 717 (6th Cir. 2021). *Wright* stressed that district courts "have wide latitude to deny compassionate release based on the seriousness of the underlying offense." *Id.* at 719. Courts "may place great

weight" on serious crimes like possessing large quantities of drugs. *Id.* (quoting *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013)); *see Navarro*, 986 F.3d at 672. The district court was thus within its discretion when it assigned a particularly hefty weight to Randall's methamphetamine offense. After all, it emphasized (on multiple occasions) the substantial scale and significance of Randall's drug-distribution activities.

**IV**

The district court did not abuse its discretion when it denied Randall's motion for compassionate release. Its order is **AFFIRMED**.