RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee*,

*v.*

KARL ALAN WHITE, JR.,

          *Defendant-Appellant*.

No. 25-1857

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:07-cr-00029-1—Paul Lewis Maloney, District Judge.

Decided and Filed: June 15, 2026

Before: SILER, NALBANDIAN, and HERMANDORFER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** James K. Fett, FETT & FIELDS, P.C., Pinckney, Michigan, for Appellant. Nils R. Kessler, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. Karl White received a lengthy sentence for running a vast drug operation. While serving his sentence, White suffered brain damage. This injury left him paralyzed and blind. So he moved for compassionate release, asking the district court to reduce his sentence. The district court denied his application, and White appealed. On appeal, White argues that the district court abused its discretion by "disregarding" certain sentencing factors. But because the district court acted well within its discretion, we AFFIRM.

**I.**

**A.**

In the mid-2000s, Karl White was untouchable.  He operated a large drug business, which bankrolled his lavish lifestyle as a Kalamazoo kingpin.  And business was booming.  White bought expensive cars, expanded his operation, and carried up to $400,000 cash.  Over one six-month period, White bought $600,000 worth of cocaine from a single supplier.  And he protected his stash with firepower.

But before long, the police caught on.  They first caught White in 2003 at a traffic stop, where he had a pistol and 20 grams of crack cocaine.  And in 2004, during another traffic stop, police caught White with cash, a digital scale, rubber bands, and 87 grams of crack.  Two years later, police saw White leave the scene of a shooting.  So they searched his girlfriend's apartment, finding a pistol that White had stored in his child's bedroom.  Finally, the police arranged a sting operation.  They recorded White orchestrating a large drug deal—two kilograms of cocaine for $38,000.  But after the operation, they couldn't find White.  After locating his attorney, the police finally got White to self-surrender.  Federal authorities arrested White, and they charged him with seven counts of various drug and gun crimes, ranging from the 2003 traffic stop to the 2007 sting operation.

For years, White had been paranoid.  At trial, his girlfriend testified that her cooperation with the police had caused White to abuse her.  He allegedly choked her, punched her, and threw her down the stairs.  During one incident, she was eight months pregnant, and after another, she suffered permanent eye damage.  She also testified that White ran her car off the road, doused her belongings in gasoline, and forced her to take a polygraph test.  And another witness explained that White had recruited him to blow up the girlfriend's garage and car.  When it came time for her to testify at White's trial, White took custody of their child, telling his girlfriend to keep quiet.  But White didn't stop there.  He threatened another witness at a Texas Roadhouse, warning him not to testify.

In the end, a jury convicted White on all seven counts.  The court found that White had distributed at least 300 kilograms of cocaine.  And at sentencing, White made things worse.

He accused the witnesses of "lying," and he accused the judge of not "respect[ing] the law." R.141, PageID 1685. Then he started arguing with the judge. The argument ended with a fiery exchange. The judge said, "Keep your mouth shut. Keep your mouth shut. . . . I find that you are totally unrepentant and a manipulative individual with no regard whatever for lawful conduct." *Id.* at PageID 1694. White chimed in, "Same with you, Your Honor." *Id.* The judge sentenced White to life in prison.

White appealed, and we found an error in his sentence. The trial testimony revealed 145 kilograms of cocaine, not 300. So we remanded for resentencing. And at resentencing, White received 35 years' imprisonment.

**B.**

White's prison sentence didn't go smoothly. In 2013, he unsuccessfully moved for release under 18 U.S.C. § 2255, again arguing that the witnesses against him were liars and that his attorney was constitutionally ineffective. And in 2014, White contracted meningitis. This disease ravaged him. It paralyzed his legs, and it took his sight. By the time he recovered, White was a partially blind paraplegic. Then he developed mental problems, leading to delusions.

Still, White kept his voice. On two separate occasions, for example, he harassed and berated prison nursing staff. In 2020, he exclaimed that he wasn't one nurse's "f***ing child." And in 2022, he yelled at another "you f***ing b****, come and suck my d*** you b****. Dumb b****. You like to suck d***, I know I know that."

In 2025, White moved for compassionate release.

**C.**

The district court denied White's motion. It accepted that White's physical condition presented an "extraordinary and compelling" circumstance, as required by the compassionate-release statute. But then it surveyed the sentencing factors. The court found that these factors weighed against White's early release because White's medical problems didn't nullify the underlying justifications for his sentence. Originally, White received a lengthy sentence to

punish his egregious conduct, to deter others from criminality, and to protect the public.  The court noted that White's medical situation affects only one of these sentencing factors—public protection.  And it was "not convinced that [White] presents no risk whatsoever to the public." R.272, PageID 3805.

White appeals.  He argues that the district court procedurally and substantively abused its discretion by "unreasonably balancing" the sentencing factors.  Appellant Br. at 7.

## II.

### A.

We review the district court's decision for abuse of discretion.  *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020).  Under this "deferential" standard, we ask whether the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Id.* (citations omitted).  And "we consider the entire record, including the court's balancing of the § 3553(a) factors at the original sentencing."  *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020).

When a district court decides a compassionate-release motion, it considers three things: "(1) extraordinary and compelling reasons for release; (2) the section 3553(a) sentencing factors; and (3) any applicable policy statements."  *United States v. Wright*, 991 F.3d 717, 718 (6th Cir. 2021).  If the prisoner flunks any of these requirements, he loses, and the court need not consider the others.  *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

Here, the district court relied solely on the second requirement:  the § 3553(a) factors. When a district court balances these factors, it "need not specifically articulate its analysis of every single § 3553(a) factor."  *Jones*, 980 F.3d at 1114 (citation modified).  Instead, it enjoys "wide latitude to deny compassionate release based on the seriousness of the underlying offense."  *Wright*, 991 F.3d at 719.  This "wide latitude" stretches far.  A court can "deny compassionate release based on the seriousness of the offense" so long as it "considers the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority."  *Id.* (citation modified).  And importantly, an inmate's "disagreement with how the

district court balanced the § 3553(a) factors, standing alone, is not a sufficient ground for reversal." *United States v. Clemmons*, 2025 WL 3198058, at \*2 (6th Cir. July 18, 2025) (order) (citation modified).

**B.**

The district court didn't abuse its discretion here.

We've upheld compassionate-release denials in similar cases. In one case, a district court denied compassionate release to a prisoner who suffered medical problems, in large part because the offense conduct—possessing 10 kilograms of cocaine—was "very serious." *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021). There, the "serious nature of the offense made it obvious that the district court did not abuse its discretion when balancing the sentencing factors." *Wright*, 991 F.3d at 719 (citing *Navarro*, 986 F.3d at 672). That's because courts "'may place great weight' on serious crimes like possessing large quantities of drugs" when they deny compassionate-release motions. *United States v. Randall*, 2023 WL 6389604, at \*5 (6th Cir. Oct. 2, 2023) (quoting *Wright*, 991 F.3d at 719).

Here, White possessed over 14 times more cocaine than the prisoner in *Navarro*. And the district court offered analysis that went well beyond the seriousness of his conduct—it explicitly considered four § 3553(a) factors. The first two factors addressed the seriousness of White's crimes. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A); R.272, PageID 3804. And the third factor also supported the original sentence because White's sentence deters others' criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B); R.272, PageID 3804–05. The district court found that White's medical condition has no bearing on these factors.

Lastly, it considered § 3553(a)(2)(C). This factor addressed the threat that White poses to the public. The court found that although White's disability lessens the threat he poses to the public, he still poses a threat. And that's correct. Recall White's conduct. He orchestrated a drug operation from his phone, and he recruited allies to cause violence. He didn't use his legs or eyes to commit these crimes. He used only his voice. And, as his mistreatment of nurses shows, his voice is alive and well. In the end, the district court clarified that it had considered

"all of the § 3553(a) factors, including those not specifically mentioned," and it denied White's motion.  R.272, PageID 3805.

Under our precedent, that's enough.  *See Jones*, 980 F.3d at 1114; *Wright*, 991 F.3d at 719.  The district court "more than adequately explained why the § 3553(a) factors did not support a sentence reduction," and it had discretion to do so.  *Ruffin*, 978 F.3d at 1002, 1008–09 (affirming a district court's denial of compassionate release when a partially paralyzed prisoner had previously threatened witnesses); *see* 18 U.S.C. 3582(c)(1)(A) ("the court . . . *may* reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a)" (emphasis added)).

The district court didn't make any mistake of law or fact.  It found that White's conduct was egregious, that a long sentence could deter other criminals, and that he still poses some danger to society.  So because the § 3553(a) factors counseled against release, the court denied his motion.  This was a "perfectly reasonable conclusion."  *Wright*, 991 F.3d at 720; *see United States v. Richardson*, 960 F.3d 761, 765 (6th Cir. 2020) (per curiam) ("[H]ow much weight a judge gives to any § 3553(a) factor is a matter of reasoned discretion to which we owe highly deferential review." (citation omitted)).

## C.

White pushes back.  But we don't find his arguments convincing.

First, he accuses the district court of "disregarding [his] medical conditions" in considering the § 3553(a) factors.  That's false.  The district court considered his medical condition in detail, explaining his disabilities, medical history, and limitations.

Second, White argues that the district court applied an incorrect legal standard when it evaluated the need to protect the public.  In his mind, the court imposed a "no risk whatsoever" standard, where White couldn't obtain relief unless he poses zero risk to the public.  But the court didn't use that standard.  Instead, it weighed the sentencing factors.  And when it considered one factor—whether White's sentence still protects the public, given his disabilities—it found that while White's disabilities lower the risk he poses to the public, they

don't eliminate it. That determination comports with § 3553(a)(2)(C). *See Ruffin*, 978 F.3d at 1009. So when the court saw several factors that supported his sentence, *see* § 3553(a)(1)–(2), and one factor that cut both ways, *see* § 3553(a)(2)(C), it was well within its discretion to deny relief.

Third, he accuses the district court of disregarding other § 3553(a) factors. Specifically, he says that (a)(2)(D) and (a)(3) warrant his release. These factors instruct district courts to consider a prisoner's "medical care" needs and the "kinds of sentences available." 18 U.S.C. § 3553(a)(2)(D), (a)(3). White says that his prison can't provide sufficient medical care for his mental illness, and that he could live with his mother instead. He says that the district court didn't consider these arguments, since it didn't address them. But the court did address these factors. It explained that White's psychiatric problems were "Within Normal Limits" according to medical records, and it found that White's "medical situation implicates only 3553(a)(2)(c)." This comports with our precedents. We allow district courts to "be more cursory in their compassionate release decisions if the whole record supplies the judge's factual reasons." *Jones*, 980 F.3d at 1115–16. And here, the court's detailed recounting of White's medical situation, along with its statement that White's medical situation doesn't implicate the other factors, is sufficient. So because "the record as a whole demonstrates that the pertinent factors were taken into account," the court didn't need to "specifically articulate its analysis of every single § 3553(a) factor." *Id.* at 1114 (citation modified).

**III.**

For these reasons, we AFFIRM.